WESTERN ELECTRIC CO. v. DEPARTMENT OF REVENUE.

1. TAXATION—CONSTITUTIONAL LAW—PRIMARY SCHOOL INTEREST FUND—SUBJECTS OF TAXATION.

The provision of the Constitution directing that all subjects of taxation contributing to the primary school interest fund at the time the Constitution was adopted should continue to contribute to that fund meant the underlying principle on which the tax is designed and imposed (Const. 1908, art. 10, § 1).

2. SAME—TELEPHONE COMPANIES—PRIMARY SCHOOL INTEREST FUND—SPECIFIC AD VALOREM AND USE TAXES—CONSTITUTIONAL LAW.

The fact that at time the present Constitution was adopted a telephone company was subject to a specific tax on its property and business computed upon the gross receipts derived

therefrom within this State, which tax was payable into the primary school interest fund, rather than subsequently imposed tax on its property on an ad valorem basis payable into same fund and which was to be in lieu of all taxes for State and local purposes permitted application to such a company of use tax act although moneys derived therefrom were paid into the State general fund, since the use tax therein imposed was upon the privilege of using, storing or consuming tangible personal property delivered in interstate commerce after it has come to rest in this State, was not a property tax, and was a different subject of taxation than that involved in the act in force at time of adoption of Constitution (Const. 1850, art. 10, § 14, as amended in 1900; Const. 1908, art. 10, §§ 1, 4, 5; Act No. 179, Pub. Acts 1899; Act No. 282, Pub. Acts 1905, as amended by Act No. 49, Pub. Acts 1909; Act No. 94, Pub. Acts 1937).

3. SAME—USE TAX—PURPOSE.

The use tax act was enacted for the purpose of levying and collecting a specific tax for the privilege of using, storing or consuming tangible personal property, not subject to the sales tax, brought into the State in interstate commerce, after it has come to rest in this State (Act No. 94, Pub. Acts 1937).

4. SAME—PRIMARY SCHOOL INTEREST FUND—SUBJECTS OF TAXATION.

Taxes from any new or different subject of taxation than those contributing to the primary school interest fund at time the present Constitution was adopted may, by legislation, be put to uses other than the primary school interest fund (Const. 1908, art. 10, § 1).

5. SAME—SUBJECTS OF TAXATION—PRIMARY SCHOOL INTEREST FUND.

"Subjects of taxation" as that term is used in provision of present Constitution continuing source of revenue for the primary school interest fund does not mean the taxpayer who is made the subject of the tax (Const. 1908, art. 10, § 1).

6. SAME—USE TAX—TELEPHONE COMPANIES—PRIMARY SCHOOL INTEREST FUND.

The Supreme Court takes judicial notice of recent enactments appropriating substantial sums of money out of the State general fund to supplement sums contributed to education by the primary school interest fund, hence no especial importance may be attached to claim that the primary school interest fund would be seriously affected by placing a telephone company's use tax into the general fund of the State (Const. 1908, art. 10, § 1; Act No. 94, Pub. Acts 1937).

7. SAME—USE TAX—VALIDITY OF ASSESSMENT AND PENALTY.

Section of use tax act imposing a penalty for nonpayment of assessment within 15 days of service of notice that same was made does not exclude any other remedy by means of which the validity of the assessment and penalty may be challenged by one declared liable by the department of revenue (Act No. 94, § 11; Pub. Acts 1937; Act No. 122, Pub. Acts 1941).

8. SAME—USE TAX—VALIDITY OF ASSESSMENT—COURT OF CLAIMS.

The court of claims has jurisdiction to determine validity of assessment under use tax act and penalty for delay in payment where taxpayer has paid tax under protest (Act No. 94, § 11, Pub. Acts 1937; Act No. 122, § 9, Pub. Acts 1941).

9. SAME—USE TAX—PENALTY FOR DELAY.

If an assessment under the use tax act is held invalid in whole or in part, the validity or amount of 25 per cent. penalty imposed for undue delay in payment depends upon the ultimate fate of the assessment itself (Act No. 94, § 11, Pub. Acts 1937).

10. SAME—USE TAX—DUE PROCESS—EQUAL PROTECTION—PAYMENT UNDER PROTEST—VALIDITY OF TAX.

Party against whom an assessment under the use tax act has been levied is not denied due process of law and the equal protection guaranteed by the Constitution when required to pay the tax under protest before filing claim for recovery thereof in the court of claims in order to determine validity of the tax and of plaintiff's right to a return of the tax and penalty (Act No. 94, § 11, Pub. Acts 1937; Act No. 122, § 9, Pub. Acts 1941).

11. SAME—USE TAX—PENALTY.

Penalty of 25 per cent. of amount of assessment for undue delay in payment of use tax act, nature of tax and difficulties attendant on its levy and collection (Act No. 94, § 11, Pub. Acts 1937).

12. SAME—USE TAX—ASSESSMENT—PENALTY—JUDICIAL REVIEW.

An assessment under the use tax act and the imposition of a penalty thereunder are not final until there has been a judicial determination, as the taxpayer may have, in addition to a hearing by the department of revenue on his petition for reassessment and judicial review thereof by any appropriate procedure provided by law, an appeal to the State board of tax appeals; by paying tax under protest, a claim may be filed

in the court of claims; or taxpayer may file a bill in chancery for a declaratory decree as to its rights (Act No. 94, § 11, Pub. Acts 1937; Act No. 122, §§ 7, 9, Pub. Acts 1941).

13. SAME—USE TAX—DEPENDENCE OF PENALTY UPON VALIDITY OF ASSESSMENT.

Under use tax act imposing a penalty for undue delay in payment of assessment where tax as applied to a particular taxpayer is held invalid, taxpayer would be entitled to recover both tax and penalty and where assessment is valid and penalty was properly imposed neither would be recoverable in proceeding in court of claims (Act No. 94, § 11, Pub. Acts 1937; Act No. 122, § 9, Pub. Acts 1941).

14. COSTS—PUBLIC QUESTION—RECOVERY OF USE TAX ASSESSMENT AND PENALTY.

No costs are allowed in proceeding in court of claims to recover use tax and penalty paid under protest in view of public character of issues involved (Act No. 94, § 11, Pub. Acts 1937; Act No. 122, § 9, Pub. Acts 1941).

REID, J., dissenting.

Appeal from Court of Claims; Hayden (Charles H.), J., presiding. Submitted April 12, 1945. (Docket No. 57, Calendar No. 42,761.) Decided December 3, 1945.

Claim by Western Electric Company, Inc., a New York corporation, against the State of Michigan, Department of Revenue, and another to recover amount of use tax and penalty paid under protest. Michigan Bell Telephone Company, a Michigan corporation, intervened as a party plaintiff. Judgment for plaintiff for amount of penalty. Plaintiff appeals. Defendants cross-appeal. Reversed and remanded for entry of judgment of no cause for action.

*Thomas G. Long, Karl F. Oehler,* and *Butzel, Eaman, Long, Gust & Kennedy,* for plaintiff and intervener.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Meredith H. Doyle* and *T. Carl Holbrook,* Assistants Attorney General, for defendants.

Boyles, J. The principal question here involved is whether plaintiffs are liable for a use tax under Act No. 94, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3663–41 *et seq.,* Stat. Ann. 1944 Cum. Supp. § 7.555 [1] *et seq.*). A second issue questions the right of the State to claim a penalty for nonpayment. The facts are not in dispute.

Plaintiff Western Electric Company, Inc., is a New York corporation organized and existing under the laws of that State, continuously authorized to do business in Michigan beginning in June, 1916. It is licensed under the Michigan sales tax act and registered under the use tax act. Its manufacturing operations are conducted in Illinois, New Jersey, and Maryland, and it has warehouses located in several States including Michigan. Its principal place of business in Michigan is in Detroit. Plaintiff Michigan Bell Telephone Company is a Michigan corporation organized and existing under Act No. 129, Pub. Acts 1883, of this State. It was so organized in 1904 by original articles of association under the name Michigan State Telephone Company, and has ever since continued as such corporation, its name having been changed by amendment to Michigan Bell Telephone Company.

Defendant Louis M. Nims, State commissioner of revenue, on March 18, 1942, under the authority of the use tax act, *supra,* levied a use tax against plaintiff Western Electric Company in respect of tangible personal property coming into this State from time to time from August 1, 1938, to June 30, 1941, in interstate commerce, for plaintiff Michigan

Bell Telephone Company as the user or consumer. Western Electric Company appealed from said levy to the State board of tax appeals constituted under Act No. 122, Pub. Acts 1941 (Comp. Laws Supp. 1942, §§ 3695-1—3695-19, Stat. Ann. 1942 Cum. Supp. §§ 7.657 [1]—7.657 [19]), which board heard the appeal and upheld the levy. Within the time for payment provided by law plaintiff Western Electric Company paid to the State under protest $557,975.58 as determined by said board, of which $446,402.55 was tax and $111,573.03 was penalty, and then filed the instant claim in the court of claims to recover the sums so paid. The attorney general, appearing for the defendants, moved to dismiss the case and the Michigan Bell Telephone Company petitioned the court of claims for leave to intervene as a party plaintiff, on the ground that the liability, if any, imposed by the use tax act was against it as the consumer and that the Western Electric Company was made liable under the act only as the collecting agent with ultimate liability, if any, against the consumer Michigan Bell Telephone Company. The court denied the attorney general's motion to dismiss and granted the telephone company leave to intervene. It is conceded that if the telephone company is not liable for the tax, then the Western Electric Company would not be liable and would be entitled to recover the tax paid under protest. In the case before us no issue is presented as between the two plaintiffs as to which one may be held liable if the tax is upheld. Likewise there is no issue as to the amount of the levy or of the penalty.

Judge Charles H. Hayden of the Ingham circuit court, presiding in the court of claims, held that plaintiffs were liable for the tax but not for the penalty and entered judgment accordingly. Plaintiffs appeal from that part of the judgment denying

recovery. of the principal tax paid under protest, and defendants cross-appeal from that part of the judgment allowing recovery by plaintiffs of the amount of the penalty paid.

While stated by counsel in more extended language, the first question for decision is whether the Michigan Bell Telephone Company is liable for a use tax. This involves the construction of article 10, § 1, of the Michigan Constitution (1908), and its application to the Michigan Bell Telephone Company. Said section states:

"All subjects of taxation now contributing to the primary school interest fund under present laws shall continue to contribute to that fund, and all taxes from such subjects shall be first applied in paying the interest upon the primary school, university and other educational funds in the order herein named, after which the surplus of such moneys shall be added to and become a part of the primary school interest fund."

Major emphasis is placed by plaintiffs on the following italicized words:

"*All subjects of taxation* now contributing to the primary school interest fund under present laws shall continue to contribute to that fund, and *all taxes from such subjects* shall be first applied in paying the interest upon the primary school * * * funds."

Plaintiffs claim that the *telephone company* was a "subject of taxation" contributing to the primary school interest fund when the 1908 Constitution was adopted, that the use tax is in the same category as the taxes it was then paying, and that the telephone company cannot be compelled to pay the use tax inasmuch as the use tax act puts this tax money into the State general fund instead of into the pri-

mary school interest fund. The attorney general meets the issue squarely by insisting that "subjects of taxation" means the underlying principle on which the tax is levied, not merely the corporation or taxpayer who is subjected to the tax; and that the use tax is not the same "subject of taxation" as the one on which the telephone company was paying a tax when the 1908 Constitution was adopted. The attorney general particularly emphasizes that section 1 of article 10 definitely refers to subjects of taxation *now* contributing to the primary school interest fund "under present laws"—*i.e.*, at the time the Constitution was adopted, or at least at the time when it became effective January 1, 1909; and on that point claims that the Michigan Bell Telephone Company was not contributing to the primary school interest fund "under present laws" as they stood when the Constitution of 1908 was adopted or came into effect. As will be pointed out later, counsel for plaintiffs seem to agree with the attorney general that taxes from any new or different "subject of taxation" legislated into effect since 1908 could be put to other uses than the primary school interest fund—*e.g.*, the State general fund, without clashing *instanter* with article 10, § 1.

At the outset, we are of the opinion that "subjects of taxation" as used in section 1 of article 10 of the 1908 Constitution means something more than the corporation, public utility or individual taxpayer who may be made liable by legislative enactment for a tax. It connotes a deeper significance, the underlying principle on which the tax is designed and imposed.

This brings us to a consideration of the first essential question which must be settled, namely, what were the taxes which were *then* being contributed to the primary school interest fund by the telephone company.

When the Constitution of 1908 came into effect the Bell Telephone Company was paying a specific tax *on its property and business* under the provisions of Act No. 179, Pub. Acts 1899, *computed* upon the gross receipts derived from its business within this State. While this act did not expressly provide for payment of such taxes into the primary school interest fund, this act was in effect in 1900 when the amendment to section 10 of article 14 of the Constitution of 1850 was adopted (see p. 404, Pub. Acts 1901). This amendment provided that all taxes thereafter levied on the property of such classes of corporations as were then paying specific taxes under laws then in force should be applied to the primary school interest fund and the State debt until extinguished. This amendment to the Constitution being self-executing, thereafter the taxes paid by the telephone company were necessarily put into the primary school interest fund. This amendment further states that the legislature might provide for the assessment of the property of corporations at its true cash value by a State board of assessors, as well as to provide for the collection of specific taxes from corporations; and that all such taxes were to go into the primary school interest fund. However, no such legislation was enacted imposing an ad valorem tax on telephone companies (*i.e.,* the Michigan Bell Telephone Company) until after the Constitution of 1908 was adopted, and Act No. 179, Pub. Acts 1899, continued to govern the imposition of specific taxes on telephone companies at the time the Constitution of 1908 became effective. It is significant that article 10, § 5, of the Michigan Constitution (1908) expressly authorizes the legislature to provide for the assessment of the property of telephone companies (among other corporations) at its

true cash value; and article 10, § 4, expressly authorizes the legislature to impose specific taxes; but neither section 4 nor section 5 expressly provides that the proceeds of such taxes, whether specific or property taxes, shall be placed in the primary school interest fund. We find such requirement only in article 10, § 1, and particularly note it provides that "all subjects of taxation *now* contributing to the primary school interest fund *under present laws* shall continue to contribute to that fund." It was not until some months after the Constitution of 1908 became effective that the legislature enacted a law to include telephone companies among those corporations subject to assessment of property on an ad valorem basis (Act No. 49, Pub. Acts 1909, amending Act No. 282, Pub. Acts 1905).* Beginning with Act No. 49, Pub. Acts 1909, effective in September, 1909, and continuously since that time, the Michigan Bell Telephone Company has been subject to an ad valorem tax and has been taxed under the provisions of that act. Beginning in September, 1909, section 14 of said act (1 Comp. Laws 1929, § 3565 [Stat. Ann. § 7.264]) became applicable to the Michigan Bell Telephone Company and still does so apply. It was not applicable to the Michigan Bell Telephone Company in 1908 when the Constitution of 1908 was adopted.

Thus, beginning in 1909 after the Michigan Constitution of 1908 became effective, the telephone company has been assessed by the State board of assessors, and has continuously paid a tax on an ad valorem basis, under Act No. 282, Pub. Acts 1905, as amended by Act No. 49, Pub. Acts 1909. Under section 17 of Act No. 282, Pub. Acts 1905 (1 Comp. Laws 1929, § 3568 [Stat. Ann. § 7.267]), to which

* See 1 Comp. Laws 1929, § 3552 *et seq.* (Stat. Ann. § 7.251 *et seq.*).—REPORTER.

the 1909 act was amendatory (said section 17 remaining unchanged by the 1909 act), this tax shall be applied to the primary school interest fund. Admittedly the Michigan Bell Telephone Company has been paying taxes under this act since 1909 and these taxes have been applied to the primary school interest fund.

Section 14 of Act No. 282, Pub. Acts 1905, as amended by Act No. 49, Pub. Acts 1909, provides that this (ad valorem) tax "shall be in lieu of all taxes for State and local purposes." Section 21 of the use tax act provides that "all moneys * * * collected under * * * this act shall be deposited * * * in the State treasury to the credit of the general fund." Plaintiffs at first claimed that the telephone company could not be legally subjected to any tax levied for the purposes of the general fund of the State. It is true that Act No. 282, § 14, Pub. Acts 1905, as amended by Act No. 49, Pub. Acts 1909, provides that the taxes levied thereunder "shall be in lieu of all taxes for State and local purposes." It is also true that the use tax act provides that all moneys collected under the provisions of the act shall be deposited in the State treasury to the credit of the general fund. Act No. 94, § 21, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3663-61, Stat. Ann. 1944 Cum. Supp. § 7.555 [21]). Obviously the use tax is thus made available "for State and local purposes." However, counsel for plaintiffs recognize and apparently concede that as the use tax act is later in point of time than Act No. 49, Pub. Acts 1909, the legislature in enacting the later use tax act could provide for an additional tax, by subsequent enactment, to be used for State and local purposes. Counsel for plaintiffs do not now rely on this question and further concede that no Federal question is presented under the Consti-

tution or statutes of the United States, and that no question of double taxation is involved in the case.

Under Act No. 179, Pub. Acts 1899, the tax which the telephone company was paying into the primary school interest fund when article 10, § 1, of the Constitution (1908) became effective, was computed (according to the act) upon the basis of gross receipts, but the tax was declared by the statute to be a tax *upon the property and business.* Obviously this was a "subject of taxation contributing to the primary school interest fund," under article 10, § 1, of the 1908 Constitution. Since article 10, § 1, came into effect, the telephone company still contributes to the primary school interest fund by virtue of Act No. 282, Pub. Acts 1905, and the amendment of that act by Act No. 49, Pub. Acts 1909, placing telephone companies under that act. These two acts provide for assessment of the property of telephone companies on an ad valorem basis and provide that all taxes collected shall be applied to paying the interest on educational funds, payment of the State debt, and the primary school interest fund. As hereinbefore stated, on January 1, 1909, the telephone company was still contributing to the primary school interest fund under and by virtue of Act No. 179, Pub. Acts 1899. Act No. 282, Pub. Acts 1905, provided for the taxing of the property of certain corporations on an ad valorem basis, but telephone companies were not included in its application. The first time that the property of telephone companies was taxed on an ad valorem basis was, as hereinbefore stated, in 1909, under Act No. 49, Pub. Acts 1909, subsequent to the effective date of the 1908 Constitution. It is essential that this be pointed out, to emphasize the conclusion that the Michigan Bell Telephone Company was not taxed on an *ad valorem* property basis when the

1908 Constitution came into effect. We agree with counsel that the question here presented is governed by the provisions of Act No. 179, Pub. Acts 1899, the provisions of the use tax act (Act No. 94, Pub. Acts 1937, *supra*), and the application of section 1 of article 10 of the 1908 Constitution when considered in connection with those two acts. Subsequent changes after the 1908 Constitution came into effect do not control the question before us.

Thus the narrow question is whether the use tax is one of the same "subjects of taxation" that were contributing to the primary school interest fund pursuant to Act No. 179, Pub. Acts 1899, when the Constitution of 1908 became effective. That act plainly purports to provide for the assessment and levy of taxes *upon the property and business* of express companies, *telephone companies* and telegraph companies, and no others. Under its provisions telephone companies were required to furnish the auditor general an annual statement under oath, showing among other things the number of miles owned, operated or leased; total number of telephone stations and telephone instruments used therein; average number of telephone poles per mile; the number of poles and miles of wire used for each telephone exchange or line; and the amount of the gross receipts for the current year. Section 5 of the act requires every telephone company owning, operating or transacting a telephone business in this State to "pay to the State treasurer on the statement of the auditor general a specific tax *upon the property and business* of such * * * telephone company, * * * which tax shall be equal to an amount to be computed in the following manner: * * * upon the gross receipts of such telephone company derived from business within

this State for the year included in the report provided for in section two of this act, three per cent. of such gross receipts."

We are impelled to the conclusion that this was a tax on property, although it was not an ad valorem tax but was computed on the gross receipts, taking into consideration the value and extent of both the property and the business of the telephone company.

To determine whether the foregoing tax was in the same category as the use tax, within the meaning of article 10, § 1, of the 1908 Constitution, requires an analysis of the use tax act and a comparison of the two "subjects of taxation." The use tax act (Act No. 94, § 3, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 3663-43, Stat. Ann. 1944 Cum. Supp. § 7.555 (3)]) provides:

"There is hereby levied upon and there shall be collected from every person in this State a specific tax for the privilege of using, storing or consuming tangible personal property in this State after June thirty, nineteen hundred thirty-seven, which tax shall be equal to three per cent. of the price of such property. For the purpose of the proper administration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that tangible personal property purchased on or after June thirty, nineteen hundred thirty-seven by any person for delivery in this State is purchased for storage, use or other consumption in this State."

Counsel for plaintiffs argue that the tax paid by the telephone company and the use tax provided for in the above act are the same "subjects of taxation" —that if the one is a property tax, the other is likewise. The law has been definitely settled in this State that the so-called use tax under Act No. 94, Pub. Acts 1937, is not a property tax. It is an ex-

cise or privilege tax. *Banner Laundering Co. v. State Board of Tax Administration,* 297 Mich. 419. That being the settled law of this State, is this use tax, which is imposed "for the privilege of using, storing or consuming tangible personal property in this State," one of the "subjects of taxation" which was contributing to the primary school interest fund when article 10, § 1, of the Michigan Constitution (1908) became effective on January 1, 1909?

The essential elements of the use tax and the underlying principles of taxation on which it is based distinguish it from the tax imposed by Act No. 179, Pub. Acts 1899. The use tax was enacted for the purpose of levying and collecting a specific tax for the privilege of using, storing or consuming tangible personal property. *Goebel Brewing Co. v. State Board of Tax Administration,* 306 Mich. 222. It is complementary to the sales tax (Act No. 167, Pub. Acts 1933, as amended [Comp. Laws Supp. 1940, § 3663–1 *et seq.,* Stat. Ann. § 7.521 *et seq.*]). Property, the sale of which is subjected to the sales tax, is exempted from payment of the use tax (Act No. 94, § 4, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 3663–44, Stat. Ann. 1944 Cum. Supp. § 7.555 (4)]). This act is designed to impose an excise tax on the use, storage or consumption of tangible personal property brought into the State in interstate commerce, after it has come to rest in this State. *Banner Laundering Co. v. State Board of Tax Administration, supra.*

The tax here paid under protest which plaintiffs seek to recover was not imposed on the *sales* of tangible personal property made by Western Electric Company to Michigan Bell Telephone Company; if it were, plaintiffs would have been liable for the sales tax and this case would not have arisen.

Neither was it imposed on the property and business of the telephone company, as was the situation under Act No. 179, Pub. Acts 1899. From an analysis of the distinction between the two acts under consideration, *i. e.,* Act No. 179, Pub. Acts 1899, which imposes a tax on the "property and business" of the telephone company, and the use tax act which imposes a tax on the privilege of using, storing or consuming tangible personal property coming into this State, after it comes to rest, we conclude that the taxes imposed by these two acts are not on the same "subjects of taxation" referred to in article 10, § 1, of the State Constitution of 1908.

We refer briefly to cases relied on by counsel for plaintiffs. Article 10, § 1, of the 1908 Constitution was considered by the court in *Jasnowski v. Board of Assessors of the City of Detroit,* 191 Mich. 287. The 1915 legislature, in enacting the motor vehicle law (Act No. 302, Pub. Acts 1915) [*] required all owners of motor vehicles to register the same annually and pay a tax based on the horsepower of the vehicle. It was provided (section 7) that such taxes "shall be all the lawful tax collectible on such motor vehicle and shall exempt such motor vehicle from all other forms of taxation." Vehicles owned by corporations which were contributing to the primary school interest fund were not expressly exempted from the provisions of the act. The prosecuting attorney of Wayne county sought mandamus to compel the board of assessors of Wayne county to assess an ad valorem personal property tax on motor vehicles in the city of Detroit, claiming that the motor vehicle act was unconstitutional for vari-

---

[*] See 1 Comp. Laws 1929, § 4632 *et seq.* (Stat. Ann. § 9.1431 *et seq.*).—REPORTER.

ous reasons, among them because it provided that the money should be devoted to highway purposes, whereas certain corporations which were contributing to the primary school interest fund when this constitutional provision became effective in 1909 were then owners of motor vehicles that were taken into consideration by the assessors in determining the value of the corporate property for the purpose of taxation, and hence contributed to the said fund. *Jasnowski* v. *Board of Assessors of the City of Detroit, supra.* The court held the act to be constitutional as against all objections, and by way of dictum said that such motor vehicles were not subject to the act. Parties essential to such a determination were not before the court and the case was mainly decided on other grounds. In the case before us, plaintiffs concede that taxes from any new or different subject of taxation may by legislation be put to uses other than the primary school interest fund. The *Jasnowski Case* does not control the issue now before us.

Both plaintiffs and defendants rely on *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich. 261. In that case Act No. 85, Pub. Acts 1921 (2 Comp. Laws 1929, § 10136 *et seq.* [Stat. Ann. § 21.201 *et seq.*]), imposed an annual franchise fee upon corporations. The question of the validity of this provision of the statute came before this court in the above case and the same arguments were used against the validity of that tax that are here used by the plaintiffs. In that case the court construed the provisions of the Constitution here in question, and held that the annual franchise fee imposed by the corporation act of 1921 is a tax which the legislature could impose and require to be credited to the general fund.

Plaintiffs concede that:

"The use tax could of course be levied for the purposes of the primary school fund if the legislature thought it expedient.   *   *   *   Plaintiffs have endeavored to be both explicit and emphatic that no exemption from taxation is claimed or involved.   Plaintiff telephone company is subject to any kind of tax the legislature may see fit to provide.   The only limitation is article 10, § 1, of the Constitution that any tax whatsoever the kind and the manner of levy must be levied for the primary school interest fund and for no other purpose."

It is difficult to follow plaintiffs' logic in admitting that the State could constitutionally exact the use tax if it were to be put into the primary school interest fund but could not legally put the use tax, if and when collected, into the general State fund. Plaintiffs argue:

"The people having by the Constitution in effect impounded the telephone company's tax-paying ability for that sole purpose—education being one of the highest functions of government."

Such an argument must be based on the assumption that "subjects of taxation" in article 10, § 1, means the taxpayer who is made the subject of the tax, which theory we reject.   Nor do we subscribe to the theory that any major importance can now be attached to the claim that the primary school interest fund may be seriously affected by placing the telephone company's use tax into the general fund of the State instead of into the primary school interest fund.   We take judicial notice of the acts of recent legislatures appropriating substantial sums of money out of the State general fund to supple-

ment the sums contributed to education by the primary school interest fund.

In so far as objections have been raised by plaintiffs we conclude that the Michigan Bell Telephone Company, and therefore the Western Electric Company, were legally liable to the State for the use tax assessed by the department of revenue. The judgment of the court of claims of no cause for action denying plaintiffs the recovery of the tax is affirmed. We have yet to consider plaintiffs' claim for a return of the penalty.

Defendants cross-appeal from that part of the judgment which allows Western Electric Company to recover the money paid by it for penalty, $111,573.03. The statute (Act No. 94, § 11, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 3663-51, Stat. Ann. 1944 Cum. Supp. § 7.555 (11)]) under which the department of revenue assessed this penalty is as follows:

"Any amount assessed by the board under the provisions of either of the two preceding sections, together with a penalty of twenty-five per cent. thereof, shall be due and payable from the person against whom the assessment has been made to the board fifteen days after the service upon such person of notice of such assessment. Unless the person to whom such notice of assessment is directed shall within fifteen days after service thereof file a petition in writing, verified under oath by said person, or his duly authorized agent, having knowledge of the facts, setting forth with definiteness and particularity the items of said assessment objected to, together with the reason for such objections, said assessment shall become and be deemed conclusive and the amount thereof shall be due and payable from the person so assessed to the board. In every case where a petition for reassessment as above

described shall be filed, the board shall assign a time and place for the hearing thereof and shall notify the petitioner thereof by registered mail, but the board shall have the power to continue the hearing from time to time as may be necessary."

The "two preceding sections" above referred to make the seller who fails to collect the tax personally liable therefor (section 9); and also make any person who neglects or refuses to make a return liable for an assessment (section 10). The only reference in the act to the assessment of a penalty for nonpayment of the tax is in the above-quoted section 11.

The language of section 11 is plain and capable of only one construction. It expressly declares that both the amount of the assessment, and a penalty of 25 per cent. thereof, shall be due and payable to the board 15 days after service of notice of the assessment. However, the fact that both the assessment and the penalty are "due and payable" does not close the door against a subsequent inquiry into the right to assess, the amount of the assessment, or the amount of the penalty (which obviously depends on the amount of the assessment). The second sentence of section 11 provides that unless the person assessed files a petition for reassessment within 15 days after receiving notice of the assessment, with reasons for objection, such *assessment* shall be deemed conclusive. We do not read into section 11 any legislative intent to exclude any other appropriate remedy by means of which the validity of an assessment (and *a fortiori* the penalty) may be challenged by one who has been declared liable for the assessment and penalty by the department of revenue. In the case at bar, plaintiff Western Electric Company paid both the assessment and the

penalty under protest and filed a petition in the court of claims to recover both, denying liability *in toto*. The attorney general does not here question the jurisdiction of the court of claims to hear and decide the issue, and the statute so provides.

We agree that if the assessment is held invalid, or to the extent that it may be held invalid, the validity or the amount of the penalty will depend upon the ultimate fate of the assessment itself. As stated in plaintiffs' brief:

"If on review the assessment of the tax is held not good then the penalty falls with the assessment."

However, as we interpret section 11, it does not follow that the taxpayer in this case—Western Electric Company—is denied due process of law and equal protection guaranteed by the Constitution, when required to pay the tax (under protest) before it may file claim for recovery thereof in the court of claims (see Act No. 122, § 9, Pub. Acts 1941 [Comp. Laws Supp. 1943, § 3695-9, Stat. Ann. 1944 Cum. Supp. § 7.657 (9)]). Plaintiffs' day in court is still available on this appeal which is to settle the question of the validity of the tax, and of plaintiffs' right to a return of the tax and the penalty.

Nor do we agree that the relative size of the penalty (25 per cent. of the assessment) renders it objectionable on constitutional grounds, in view of other provisions of the act, the nature of the tax, and the difficulties attendant on its levy and collection.

Apparently counsel for both parties on this appeal agree that the assessment of the tax and the imposition of the penalty are not final until there has been a judicial determination. In addition to

the remedy provided by section 11 of the use tax act, *supra,* for a review of the assessment, the taxpayer "may pursue any appropriate procedure provided by law for the judicial review of the issues involved," or have an appeal to the State board of tax appeals (Act No. 122, § 7, Pub. Acts 1941 [Comp. Laws Supp. 1943, § 3695-7, Stat. Ann. 1944 Cum. Supp. § 7.657 (7)]); the taxpayer may pay the tax under protest and file claim for recovery in the State court of claims (Act No. 122, § 9, Pub. Acts 1941 [Comp. Laws Supp. 1943, § 3695-9, Stat. Ann. 1944 Cum. Supp. § 7.657 (9)]) as was done in the case at bar; or the taxpayer may file a bill in chancery for a declaratory decree as to its rights (*Banner Laundering Co.* v. *State Board of Tax Administration, supra; R. C. Mahon Co.* v. *Department of Revenue,* 306 Mich. 660).

At least on this point counsel for both parties agree in their respective briefs, that in any event "if the use tax be pronounced invalid when applied to the plaintiffs, the telephone company will recapture the penalty as well as the principal amount of tax paid."

We conclude that the converse is equally true— having held that the assessment is valid, we find no adequate ground for a contrary view as to the penalty.

The judgment of the court of claims is set aside in so far as it allows plaintiffs a recovery of the penalty paid by Western Electric Company, and the case remanded to the court of claims for entry of judgment of no cause for action. In view of the public character of the issues involved, no costs shall be taxed.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with BOYLES, J.

REID, J. (*dissenting*). I do not concur in the opinion of Mr. Justice BOYLES.

Defendants in their brief raise this question: Does the Michigan "use tax act," when applied to the telephone company, involve the same subject of taxation that was contributing to the primary school interest fund, pursuant to Act No. 179, Pub. Acts 1899, when the State Constitution of 1908 became effective?

Under Act No. 179, Pub. Acts 1899, the plaintiff telephone company was then (1908) paying an annual specific tax described in section 5 of that act as,

"A specific tax upon the property and business of such express company, telephone company and telegraph company operating within this State  *  *  * computed  *  *  *  upon the gross receipts of such telephone company derived from business within this State for the year included in the report provided for in section two of this act, three per cent. of such gross receipts."

This act (Act No. 179, Pub. Acts 1899) did not expressly provide for payment of such taxes into the primary school interest fund but, since article 14, § 1, of the Constitution of 1850 was self-executing,[*] this was not necessary.

The so-called use tax is in fact a privilege tax. The words of the statute, Act No. 94, § 3, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3663–43, Stat. Ann. 1944 Cum. Supp. § 7.555 [3]), are:

"There is hereby levied upon and there shall be collected from every person in this State a specific tax for the *privilege* of using, storing or consuming tangible personal property in this State." (Italics supplied.)

---

[*] *Walcott* v. *People*, 17 Mich. 68.

At the time of the adoption and at the effective date of the Constitution of 1908, the plaintiff telephone company was a public service corporation in full possession and enjoyment of the privilege of using, storing and consuming tangible personal property in this State. Because of the nature of the telephone business, and in view of the acts of the legislature on that subject, it is fair to consider that the framers of the Constitution of 1908, the electorate who voted its adoption, and members of the legislature of the State, all knew fairly well about the telephone company's business and activities.

The plaintiff telephone company was organized in 1904 and since that date it has been continuously in business and under regulation by various commissions designated in turn by State law. It has been obliged to invest large sums of money to make compliance with those regulations. It had a right to collect tolls for service dependent upon the privilege of use, storage and consumption of tangible personal property in the State. It bore a peculiar relationship to the transaction of public affairs and of business in the State. It was required to render its service without discrimination. It is not necessary to recite in detail the various statutes and regulations pertaining to telephone companies in the State in order to discover the peculiar character of the right of plaintiff telephone company to carry on its business. From the considerations herein recited, we conclude that the privilege of plaintiff telephone company to use, store and consume tangible personal property in this State, is an inseparable portion of its franchise, even though such privilege in the case of some other person may be only a privilege and not a franchise nor a portion of a franchise. This privilege as a franchise was part of the property of plaintiff telephone company in 1908.

The plaintiff telephone company could transact no business whatsoever without the existence of the privilege, as well as the exercise of the privilege of using, storing and consuming tangible personal property in this State. That privilege was an absolutely indispensable part of the property and business of the company and amounted to a franchise on the part of this public service corporation in order that it might carry on the activities it was specially authorized to perform. That privilege (a franchise in fact), being part of the property of the telephone company, was subjected to the tax under the act of 1899, above quoted, "a specific tax upon the property and business" of the company. All taxes "from such subject of taxation," *i. e.,* "the property and business" of plaintiff telephone company, must be levied for the educational funds mentioned in Const. 1908, art. 10, § 1.

The use tax is levied for the general fund. As regards plaintiff telephone company, the levy in question in this case is therefore void under said Const. 1908, art. 10, § 1. Plaintiffs do not question the right of the legislature to levy such tax for the purpose of the educational funds mentioned.

We do not pass upon the dispute as to the validity of the proceedings and of the statute respecting penalty, since the penalty must fail with the tax.

The judgment appealed from should be reversed and the case remanded to the trial court with direction to enter judgment for plaintiffs for the full amount of the tax and penalty. Costs to plaintiffs.

The late Justice Wiest took no part in the decision of this case.