# STATE OF MICHIGAN

# COURT OF APPEALS

DAVOR VULIC,

Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

Respondent-Appellee.

FOR PUBLICATION
September 26, 2017

No. 333255
Tax Tribunal
LC No. 15-004644-TT

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

RONAYNE KRAUSE, J. *(dissenting)*.

I respectfully dissent. I agree with the majority that the only issue before us is whether petitioner is personally liable for taxes under the Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq.*, not whether his actions were otherwise lawful. However, I believe the majority misreads the plain language of the applicable statutes. I would reverse.

As an initial matter, I suspect that the unusual facts of this case may be a situation not anticipated by our Legislature and therefore it did not think to cover this particular set of facts. However, be that as it may, we may not depart from the plain language of a statute even to avoid an absurd result. *Piccalo v Nix*, 466 Mich 861; 643 NW2d 233 (2002). In the event of any ambiguity in a taxing revenue statute, such statutes "must be construed against the taxing authority." *Ecorse Screw Mach Products Co v Michigan Corp and Securities Comm*, 378 Mich 415, 418; 145 NW2d 46 (1966).

The TPTA defines a "sale" as "a transaction by which the ownership of tangible personal property is transferred for consideration and applies also to use, gifts, exchanges, barter, and theft." MCL 205.422(r). The Tax Tribunal concluded that because petitioner merely passed the cigarettes on at cost, no consideration occurred and, by implication, none of the other possibilities occurred. Respondent's construction to the contrary would render almost the entirety of the language nugatory, effectively deleting everything after "transferred." Courts must avoid construing statutes in such a way that any portion thereof is rendered nugatory. *Ally Financial Inc v State Treasurer*, 317 Mich App 316, 327-332; 894 NW2d 673 (2016). A sale must entail more than merely transferring an item, and there is no reason not to defer to the Tax Tribunal's conclusion that some form of consideration is the touchstone. Consequently, petitioner is not personally liable for taxes under the TPTA for selling or offering to sell tobacco products.

-1-

Likewise, the majority's conclusion that the transfer must have been a gift if no consideration was exchanged would do the same: if literally any possible transfer would lead to liability, then the Legislature's specifications would be nugatory. Put another way, the Legislature *must* be presumed to have limited situations under which transfer of ownership of tangible personal property would constitute a sale, or it would not have included "for consideration and applies also to use, gifts, exchanges, barter, and theft." Because we must avoid rendering any portion of a statute nugatory and must construe revenue statutes in favor of the taxpayer, and because petitioner's acts of passing the cigarette cartons on to his friend at cost does not seem to neatly fit any of the specified categories, I conclude that petitioner's actions must not constitute "sales" under the TPTA. If the Legislature had intended *any* transfer of cigarettes to be a sale, it would have defined a "sale" more simply as "a transaction by which the ownership of tangible personal property is transferred." Incongruous as the result might be, we may not depart from the plain language of the statute as enacted by the Legislature.

Furthermore, I find nothing even slightly ambiguous about the term "individual package," both words being well understood and entirely clear in context. The majority concludes that because petitioner was in possession of *unopened cartons* of cigarettes, he must have been in control of the *individual packages* therein, completely eviscerating the Legislature's specification of "individual packages." We must presume that the Legislature specified this for some reason. Petitioner was never in possession of individual packages of cigarettes *as* individual packages. Again, we may not depart from the plain language of the statute as enacted by the Legislature, even if the result strikes us as strange. I do, however, concur with the majority's extension of an invitation to the Legislature to clarify the TPTA should this not have been its intended result.

Although not addressed by the majority, my conclusions require me to address a further provision of the TPTA, under which personal tax liability may be imposed for being "in control or in possession of a tobacco product contrary to this act." Respondent argues that petitioner is an "unclassified acquirer" under MCL 205.422(z), because he was "a person . . . who imports or acquires a tobacco product from a source other than a wholesaler or secondary wholesaler licensed under this act for use, sale, or distribution." The TPTA expressly forbids, *inter alia*, the purchase or possession of tobacco by an unclassified acquirer without a license. MCL 205.423(1). Therefore, respondent somewhat confusingly appears to argue, if petitioner is an "unclassified acquirer," then by definition his lack of a license means his purchase or possession of the cigarettes was "contrary to this act" and he is personally liable for the taxes. There is no dispute that petitioner acquired the cigarettes from an unlicensed source; the question is therefore whether he did so "for use, sale, or distribution."

As discussed, the Tax Tribunal properly found that no "sale" occurred. Neither "use" nor "distribution" is defined by the TPTA. However, "distribution" is generally understood to entail transferring something to *multiple* sources, which clearly also did not occur. See Merriam-Webster's Collegiate Dictionary (11th ed). "[I]n doubtful cases, revenue statutes must be construed against the taxing authority." *Ecorse Screw Mach Products Co v Michigan Corp and Securities Comm*, 378 Mich 415, 418; 145 NW2d 46 (1966). We conclude that it would be inappropriate to conclude that petitioner acquired the cigarettes for "distribution" because he unambiguously only acquired them for the purpose of passing them on to a *single* recipient. Consequently, the critical question is whether petitioner acquired the cigarettes for "use." The

Tax Tribunal found that he did by referring to definitions of "consumer" and "use" provided in the Use Tax Act, MCL 205.91 *et seq.* (UTA).

By default, our Legislature has instructed that "All words and phrases shall be construed and understood according to the common and approved usage of the language" unless they have some special technical meaning. MCL 8.3a. If an undefined word is common and lacks a unique legal meaning, courts consult a lay dictionary. *People v Thompson*, 477 Mich 146, 152; 730 NW2d 708 (2007). "It is a cardinal rule of statutory construction that the legislative intent must be gathered from the language used, if possible, and that such language shall be given its ordinary meaning unless a different interpretation is indicated." *Goethal v Bd of Supervisors of Kent Co*, 361 Mich 104, 111; 104 NW2d 794 (1960). Helpfully, the Legislature has expressly stated that "It is the intent of this act to impose the tax levied under this act upon the consumer of the tobacco products by requiring the consumer to pay the tax at the specified rate." MCL 205.427a. However, like the word "use," the word "consumer" is also undefined in the TPTA.

Both "use" and "consumer" are common words. The proper first resort should therefore have been to a dictionary, not to a different statutory scheme with a different intent and definitions crafted to serve that different intent. Respondent argues that this Court has held that it is appropriate to refer to a definition found in another statutory scheme, but that is a misreading or misunderstanding of what this Court held. Rather, this Court held that *ambiguous* language in the TPTA should be construed in light of our Supreme Court's construction of similarly ambiguous language in the Use Tax Act, MCL 205.91 *et seq.* (UTA). *S Abraham & Sons Inc v Dep't of Treasury*, 260 Mich App 1, 14-15; 677 NW2d 31 (2003). There is no ambiguity at issue here. It is inappropriate to refer to a dictionary for a word *if* an act provides its own definition. *Betten Auto Center Inc v Dep't of Treasury*, 478 Mich 864, 864; 731 NW2d 424 (2007). However, here the Tax Tribunal simply lifted a definition from one act entirely and applied it to another without considering the different purposes behind the different acts.

In contrast to the TPTA, the UTA is an "excise or privilege tax" on "the use, storage or consumption of tangible personal property brought into the State in interstate commerce, after it has come to rest in this State." MCL 205.93(1); *Western Electric Co v State*, 312 Mich 582, 595-596; 20 NW2d 734 (1945). "Statutes in *pari materia* are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose," and they must be read together as a whole when interpreting any discrete provision therein. *City of Detroit v Michigan Bell Tel Co*, 374 Mich 543, 558, 132 NW2d 660 (1965), overruled on other grounds by *City of Taylor v Detroit Edison Co*, 475 Mich 109, 120, 715 NW2d 28 (2006). The definition of "use" at MCL 205.92(b) and "consumer" at MCL 205.92(g) in the UTA would not have been intended to be read in complete isolation from the entirety of the UTA. In other words, the definitions must be understood in the context of any exemptions from applicability *also* included in the UTA. In particular, petitioner points out that "property purchased for resale" is explicitly exempt from the Use Tax. MCL 205.94(1)(c)(*i*). The cigarettes did not and were not intended to come to rest in Michigan. The Tax Tribunal's rote application of a definition from the UTA to the TPTA was, under the circumstances, improper and out of context.

According to Merriam-Webster's Collegiate Dictionary (11th ed), a "consumer" is, in relevant part, "one that utilizes economic goods." To "consume" means, in relevant part, "to utilize as a customer." To "use" has several possible meanings, of which all relevant

possibilities pertain to engaging in the consumption of something, putting something into action or service, or expending something. It is abundantly and readily obvious that, barring a specific definition *in the act* to the contrary, the plain and unambiguous import of these words is that use or consumption for purposes of the TPTA means the final end goal of a cigarette: smoking it. It is therefore equally plain and unambiguous that petitioner is neither a consumer nor a user of the cigarettes.

It is undisputed that petitioner never intended to smoke the cigarettes, nor were any of the cigarettes ever smoked in Michigan. He therefore did not purchase them for "use" according to the common, everyday meaning of that word, which this Court must presume was the usage intended by the Legislature for purposes of the TPTA when it did not include a definition in the TPTA. Likewise, petitioner was not a "consumer" according to the common, everyday meaning of that word. The Tax Tribunal therefore erred in finding petitioner personally liable for the taxes assessed by respondent.

/s/ Amy Ronayne Krause