## CITY OF DETROIT *v.* MICHIGAN BELL TELEPHONE COMPANY.

1. STATUTES—IN PARI MATERIA.

   Statutes *in pari materia* are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose.

2. SAME—CONSTRUCTION.

   All statutes relating to the same subject, or having the same general purpose, should be read in connection with a particular. statute being construed, or whose provisions are being construed, although the enactments took place at different times, and the statutes contain no reference one to the other.

3. SAME—CONSTRUCTION—IN PARI MATERIA—REHABILITATION OF BLIGHTED AREAS—PLAT ACT.

   Provisions of the act for the rehabilitation of blighted areas concerning partial or total vacation of plats, or replatting; opening, widening, straightening, extending, vacating or closing streets, alleys or walkways; and locating or relocating water mains, sewers, or other public or private utilities, and provisions of plat act relative to the vacation of alleys, streets or other public places then being used by a public utility for public utility purposes and there is public necessity for reservation of an easement as determined by a court should be construed together as they are *in pari materia* (CLS 1961, §§ 125.74, 560.62).

---

### REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes § 350.
[2] 50 Am Jur, Statutes §§ 348, 351.
[3] 50 Am Jur, Statutes §§ 348–350.
[4] 38 Am Jur, Municipal Corporations § 559.
   25 Am Jur, Highways § 127.
[5] 50 Am Jur, Statutes §§ 384, 386–389.
[6] 50 Am Jur, Statutes §§ 348, 349, 351.
[7–9] 25 Am Jur, Highways §§ 127, 128.
[10, 11] 37 Am Jur, Municipal Corporations §§ 114, 115.
[11] 37 Am Jur, Municipal Corporations §§ 276, 288, 289.
[12] 43 Am Jur, Public Utilities and Services §§ 16, 17.
[13] 37 Am Jur, Municipal Corporations § 118.
[14, 15] 37 Am Jur, Municipal Corporations § 115.
   38 Am Jur, Municipal Corporations § 609.
[16] 14 Am Jur, Costs §§ 36, 91.

4. MUNICIPAL CORPORATIONS—VACATION OF STREETS—RESERVATION OF PUBLIC UTILITY EASEMENTS.

Provisions of statutes relative to rehabilitation of blighted areas and to plats, when construed together as *in pari materia held,* not to require, under the circumstances, that municipality reserve easements in streets and alleys sought to be vacated when development of blighted area is sought to be effected, rather than a continuance of use in previous location (CLS 1961, §§ 125.74, 560.62).

5. STATUTES—STRICT CONSTRUCTION—IN PARI MATERIA.

Strict construction of a statute should not be followed, where such construction would defeat the main purpose of other statutes relating to the same subject.

6. SAME—CONSTRUCTION—IN PARI MATERIA.

Statutes will be construed if possible so that other statutes relating to the same subject may be given effect even though enacted at an earlier date.

7. EASEMENTS—PUBLIC UTILITIES—VACATION OF STREETS—REHABILITATION OF BLIGHTED AREA—REDEVELOPMENT PLAN.

The statutory right to reservation of an easement for public utility purposes when a street or alley is vacated pursuant to the plat act does not prevail, where the act of vacation is a part of a comprehensive redevelopment plan under the rehabilitation of a blighted area involving the redesign of an entire area, including utility service facilities to serve new customers with new service demands in the redeveloped area (CLS 1961, §§ 125.74, 560.62).

8. SAME—VACATION OF STREET—REHABILITATION OF BLIGHTED AREA—RESERVATION FOR PUBLIC UTILITIES.

The refusal of reservation of an easement for public utility purposes upon the vacation of streets and alleys incident to the redevelopment plan for rehabilitation of a blighted area cannot be considered the extinguishment of an easement as there is no right to the reservation of such an easement under the plat act, the refusal to grant a nonexistent right not constituting an extinguishment (CLS 1961, §§ 125.74, 560.62).

9. SAME—VACATION OF STREETS—REHABILITATION OF BLIGHTED AREA—PUBLIC UTILITIES—RELOCATION COSTS—PLAT ACT.

The plat act contains no express provision for payment of relocation costs to public utilities in lieu of reservation of easements therefor when streets and alleys are vacated incident

to redevelopment for rehabilitation of a blighted area (CLS 1961, §§ 125.74, 560.62).

10. MUNICIPAL CORPORATIONS—URBAN RENEWAL PROJECT—GOVERNMENTAL FUNCTION.

Action of city in engaging in urban renewal project within its confines is an exercise of a governmental, as distinguished from a proprietary, function, urban renewal having been declared a function of government by the legislature and properly delegated to the city (CL 1948, § 125.71 *et seq.*, as amended).

11. SAME—URBAN RENEWAL PROJECT—POLICE POWER—GOVERNMENTAL FUNCTION.

The removal of health, crime, and fire hazards by slum clearance or urban renewal projects is clearly a proper and reasonable exercise of the police power of a city, and the fact that under the subsequent rehabilitation or restoration, the cleared area passes into private hands as private property is but an incident which does not change the nature of the project so as to cause it to lose its governmental character (CL 1948, § 125.71 *et seq.*, as amended).

12. SAME—PUBLIC UTILITY FRANCHISES—VESTED RIGHTS—RESERVATIONS—POLICE POWER.

A franchise in the public streets and alleys of a municipality that is acquired and exercised by a public utility becomes a vested property right, although dependent upon the nature of the original grant and any reservations therein, and subordinate to the rights of the municipality in the reasonable exercise of the police power as delegated to it by the State.

13. SAME—GOVERNMENTAL FUNCTION—CONTRACTS.

Municipalities cannot contract away their governmental obligations, and a contract to do so is a nullity.

14. SAME—PUBLIC UTILITIES—CONTROL.

The right of control over public utilities in the exercise of their franchises, contracts, or vested rights abides in the municipality in which the utility is present.

15. SAME—PUBLIC UTILITIES—POLICE POWER—REASONABLE.

The exercise of the police power by a municipality over private property such as franchise rights granted to and exercised by a public utility must be reasonable, the meaning of the term *reasonable* being judicially determinable under the particular facts of a given case.

16. Costs—Public Question—Urban Renewal Project—Vacation of Streets and Alleys—Removal Cost of Public Utilities.

No costs are allowed on city's appeal from order requiring it to pay removal costs to public utilities which were required to be removed from streets and alleys incident to urban renewal project, a public question being involved (CLS 1961, §§ 125.74, 560.62).

Dethmers, Black, and O'Hara, JJ., dissenting.

Appeal from Wayne; Piggins (Edward S.), J. Submitted November 7, 1963. (Calendar No. 69, Docket No. 50,088.) Decided February 2, 1965. Rehearing denied March 1, 1965. Certiorari denied by Supreme Court of the United States November 15, 1965.

In the matter of the petition of the City of Detroit, a municipal corporation, for the vacation of certain plats, streets and alleys, in connection with an urban redevelopment plan, the Michigan Bell Telephone Company, a Michigan corporation, and the Detroit Edison Company, a New York corporation, sought compensation for relocation of their public utilities installations. Final order of vacation directed payment of compensation. Plaintiff appeals. Reversed.

*Robert Reese,* Corporation Counsel (*Edward M. Welch, John H. Witherspoon, Robert D. McClear* and *William Dietrich,* Assistant Corporation Counsel), for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy* (*James M. Smith, Jack H. Shuler* and *Donald E. Brown,* of counsel), for defendant Michigan Bell Telephone Company.

*Fischer, Sprague, Franklin & Ford* (*Laurence M. Sprague,* of counsel), for defendant Detroit Edison Company.

Amicus Curiae: Michigan Association of Municipal Attorneys, by *William A. Ewart,* City Attorney of Pontiac (*Thomas E. Hunter,* Deputy City Attorney of Pontiac, of counsel), *Ralph B. Guy, Jr.,* Corporation Counsel of Dearborn, *Allen G. Hertler,* City Attorney of Royal Oak, and *Louis C. Andrews, Jr.,* Attorney Michigan Municipal League.

O'Hara, J. (*dissenting*). The question presented in this case is whether a city which vacates dedicated streets and alleys in which private utilities have previously been granted the right to maintain their facilities and requires the removal thereof and reinstallation in other streets and alleys, has exercised its reasonable right of regulation under its police power or has taken private property without compensation.

The trial court in a considered and fully documented opinion held:

"This court holds that the action of the city in directing the removal of the respondents' utility installations without compensation, under the circumstances in this case, exceeds the city's authority to exercise its police power and is a violation of the constitutional guarantees of the respondents. It is beyond the scope of regulation. It is an actual taking of private property for which just compensation must be paid. The decision on these issues being controlling, it is unnecessary to discuss the others raised by the parties."

The city appealed. Exhaustive briefs were filed and forceful argument advanced on behalf of the parties. An *amicus curiae* brief on behalf of the Michigan Association of Municipal Attorneys is acknowledged.

The facilities in question have in fact been removed and reinstalled, but under an express reserva-

tion of the right of the utilities to be compensated for the stipulated nonbetterment cost of removal and reinstallation. The facts as well as statements of position have been stipulated. The trial court succinctly set forth the factual background and we quote from his opinion:

"The issues in this case are framed from an agreed stipulation of facts. They are as follows:

"Undertaking to redevelop an area within its corporate boundaries designated as 'West Side Industrial Project, UR Mich 1–4,' the city of Detroit hereinafter referred to as the city, on July 9, 1957, through its common council and pursuant to the provisions of PA 1945, No 344, as amended (CL 1948 and CLS 1961, § 125.71, *et seq.* [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.3501 *et seq.*]), which authorizes the rehabilitation of blighted areas and prescribes the method of accomplishment, adopted and approved a redevelopment plan and directed the institution of the necessary condemnation proceedings. The estimated net costs of the project after deduction of the estimated proceeds from the private sale of some of the land was $5,221,000. On November 14, 1957 the city entered into a loan and grant contract with the United States government pursuant to title 1 of the Federal housing act of 1949[1] whereby the government would assist in financing the project by contributing 2/3 of the net cost to the city's 1/3. It is pertinent to note the Federal regulations, Urban Renewal Manual, book 1, section 11–1–2 provides 'Removal or relocation of utility lines owned by a private utility company will not be allowed as a project expenditure unless compensation to the company is required under applicable State and local law. If the LPA (local public agency —in this case the city) is required to compensate the utility company for proposed changes, the necessity for making the changes and the basis used in

---

[1] 63 Stat 413, 414. See 42 USC (1958), § 1450 *et seq.*—REPORTER.

computing the estimated amount of such compensa-
·tion shall be described.  A legal opinion as to the
·obligations of the LPA to provide the compensation
indicated shall be provided with part 1 of the appli-
'cation for loan and grant.'  The removal or reloca-
tion costs of the utility lines of private utilities was
not included in the application although such costs
for municipally-owned utilities (public lighting and
water) were included.  The development plan of
rehabilitation called for, among other things, the
vacation of certain plats, streets and alleys, and the
rerouting of certain utilities to other streets and
alleys.  The respondents, Michigan Bell Telephone
Company, hereinafter referred to as Bell, and the
Detroit Edison Company, hereinafter referred to
as Edison, maintained installations in certain of the
·streets and alleys which were to be vacated.  The
city successfully completed its condemnation pro-
'ceedings to which neither Bell nor Edison were
·named as parties.  On February 20, 1959, the instant
vacation proceedings were·instituted in accordance
with the provisions of the plat act PA 1929, No 172,
as amended (CL 1948, §§ 560.1–560.79 [Stat Ann
1953 Rev and Stat Ann 1957 Cum Supp §§ 26.431–
26.509]), which provides for the altering and vaca-
ting of plats and among other things, the reservation
of easements for utilities in vacated streets and
alleys.  Both Bell and Edison appeared and objected
insofar as the proposed vacations affected streets
and alleys in which their installations were located,
unless easements were reserved for them in these
same streets and alleys or unless the city agreed to
bear the cost of the removal and relocation of their
installations to the new areas to be designated in
·the redevelopment plan.  It should be noted that
although the installations of each utility were differ-
ently located, the legal principles involved are the
same.  A controversy developed and on June 18,
1959, pursuant to an understanding between the par-
·ties which recognized and preserved the right to
further judicial determination, an order of vacation

was entered by the Honorable Robert M. Toms, this court's predecessor, which contained the following provisions: 'Provided, however, that there is hereby reserved in the streets and alleys above described, for the use of public utilities, easements for the maintenance of the utility poles, wires and equipment as presently located; provided always that this paragraph of this order is interlocutory and is subject to further final order, to be entered after proofs and arguments.' Following the entry of this order the facilities of both Bell and Edison were removed by agreement. Bell has maintained installations in this area since 1907 pursuant to PA 1883, No 129, as amended (CL 1948, §§ 484.1–484.10, as amended [Stat Ann and Stat Ann 1957 Cum Supp §§ 22.1411–22.1419]), which provides further that its installations serve not only this area but the areas beyond. Similarly Edison has maintained facilities serving this area and areas beyond as authorized and required by the properly and legally adopted ordinances of the city of Detroit. The development plan for rehabilitation involves some 73 acres of land containing some 424 structures, which land has to be acquired and the structures demolished. It provides for street widening and paving, installation of walks, sewers and water mains, creation of a public park, rezoning, vacation of certain plats, streets and alleys, rerouting of utilities and the sale of large portions of the land to private persons and corporations for light industrial and commercial uses. It is agreed that the nonprofit, nonbetterment costs of removal and relocation amounts to $11,305 in the case of Bell and $1,746.36 in the case of Edison. The city contends that the utilities pay these costs. The utilities contend that the city should pay."[2]

---

[2] The stipulation entered into by the parties recites that the parties "are aware of the precedential value of this case in governing utility relocation costs in other development projects, pending or planned, the magnitude of which is admitted by both parties to be many times in excess of the sum involved herein."

While the 2 utilities acquired their rights to use the streets and alleys of appellant-city by different means, it is stipulated their rights for the purpose of this case are identical.

In arriving at his conclusion the trial judge postulated 4 propositions. First that the city was here engaged in a governmental as distinguished from a proprietary function. While we do not consider the proposition essential to decision, we agree. The statute[3] under which the city condemned the property involved declares the purpose to be accomplished "a public purpose and a public use." For us to hold otherwise we would have to declare the statute unconstitutional. Urban renewal has been declared a function of government by the legislature and the power to accomplish it has been properly delegated to the city. We find no merit in the distinction here urged by appellees. Incident to this claim it is also contended by appellees that because part of the land condemned by the city and otherwise acquired by it is to be subdivided and resold, the project loses its governmental character. The claim is not tenable. This precise point is controlled by our prior holding in *In re Slum Clearance,* 331 Mich 714, at p 721:

"To remove health, crime and fire hazards by slum clearance, is clearly a proper and reasonable exercise of the police power.   *   *   *   The fact that under the subsequent rehabilitation or restoration, the cleared area   *   *   *   passes into private hands to private property is an incident which does not change the nature of the slum clearance."

This rule in our jurisprudence is amply supported by other holdings, State and Federal.

---

[3] PA 1945, No 344, as amended by PA 1957, No 296 (CL 1948 and CLS 1961, § 125.71 *et seq.* [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.3501 *et seq.*]).

The second proposition held by the trial court as controlling is that upon acquisition and exercise by a utility a franchise becomes a vested property right, in the nature of a contractual right protected by Federal and State constitutional guarantee. So it does. The proposition is well settled. *City of Niles* v. *Michigan Gas & Electric Co.*, 273 Mich 255, 262. This rule, however, in this State and nationally, is subject to variations and modifications, general and specific, which render the broad statement as such incomplete. The rights acquired are dependent upon the nature of the original grant and any reservations therein. Even when acquired and exercised these rights are subordinate to the rights of the municipality in the reasonable exercise of the police power as delegated to it by the sovereignty —the State. Assuming the city here had contracted away this superior supervisory control, the action would have been a nullity. Municipalities cannot contract away their governmental obligations. The right of control over the utilities in the exercise of their franchises, contracts, or vested rights, whatever name given them, abides in the city. This rule becomes the more important as we continue to examine the development of the trial court's rationale.

Proposition 3 of the able trial judge's 4-point basis for his conclusion is that there are limitations upon the city's exercise of the police power over private property—and specifically private property in the nature of the franchise rights hereinbefore mentioned. No party to the proceedings contests this principle, and there is no point in discussing it. Like many general rules, however, this too is subject to the requirement that the exercise of the police power be "reasonable." Here we enter the area of specifics which in every case calls for a judicial determination of the meaning of "reasonable" under

the particular facts of a given case. Such determination in this case need not be made because at this point proposition 3 and the last of the trial court's premises merge and present a combined question. The judge rhetorically asks in point 4:

"Is what the city proposes here a valid exercise of regulatory police power or is it an unconstitutional taking of property?"

This is the core of the matter and we think the question encompasses the whole issue. All that is needed is a more precise delineation of the meaning of the phrase *"what the city proposes here."* We construe the phrase to mean the act of vacating the streets and alleys. There can be no doubt that as to the combined question the answer must be in the affirmative. The city is empowered by statute to do just exactly what it did. Its right so to do is prescribed in PA 1929, No 172, § 62 (CL 1948, § 560.62), as amended by PA 1958, No 101 (CLS 1961, § 560.62 [Stat Ann 1963 Cum Supp § 26.492]), which provides:

"If the petition [to vacate]   *   *   *   involves the vacation of any alley, street, or other public place then being used by any public utility for public utility purposes, *it is hereby deemed necessary for the health, welfare, comfort and safety of the public to reserve an easement therein for the use of public utilities*   *   *   *   including a situation where a public utility is not then making an actual use of the area to be vacated." (Emphasis supplied.)

Here we believe is where the issues became confused. Appellees' rights did not become involved in the exercise of the delegated police power through the power of eminent domain granted to the city by the legislature for use in acquiring real property, or any rights in property under the urban renewal act. Strictly speaking, that statute with its delega-

tion of power to the municipality in the nature of the right to condemn private property for a legislatively declared public purpose, is not here involved. As the stipulation sets forth:

"The purpose of *this* proceeding is to adjudicate and determine whether the city of Detroit is entitled to *have streets and alleys vacated in this proceeding without reservation of easements for existing public utilities' facilities or payment of relocation costs.*" (Emphasis supplied.)

Quite patently the alleys and streets wherein the equipment of appellees was located did not have to be condemned for the city to acquire control over them. These streets and alleys which ran through the whole blighted area to be rehabilitated, the city already owned.

The relative rights of the utilities and the city are to be found in the statute hereinbefore set forth which authorized the vacation of plats through which dedicated streets and alleys ran.

It would seem, short of disregarding completely the foregoing statute, the position of appellant-city cannot be sustained and the trial court reversed. We are asked to adjudicate and determine whether the city is entitled to have streets and alleys vacated in this proceeding without reservation of easements for existing public utilities. We are constrained to answer "no," because the applicable statute says *"no."* The parties having stipulated that if this be our finding—the facilities having already been removed and the easements not reserved—the damage should be in the amounts agreed upon by the parties. The trial court ordered the payment thereof. His order must be affirmed.

By our decision here we would not be understood to dilute in any degree, nor modify by any implication herefrom the obligation of a public utility to

remove, relocate and reinstall its facilities, at its own expense, within streets where easements have been acquired, when a public purpose requires. We leave unaffected by our decision here the principle enunciated in *New Orleans Gas Light Co.* v. *Drainage Commission of New Orleans,* 197 US 453 (25 S Ct 471, 49 L ed 831), and the cited cases following its rule. The principle there enunciated of the retained police power of the municipality is not here involved. Our holding is based upon the statute hereinbefore quoted which expresses a clear legislative intent to distinguish between that class of case dealing with removal, relocation, and reinstallation of utility facilities in a specific street, or under certain circumstances from one street to another *where vacation of a street or an alley in which a utility easement has been acquired is involved and one in which the street is not vacated.*

It seems to us that the question we are urged by both parties to answer judicially, namely, whether the vacation of a dedicated street or alley with the attendant requirement of the removal of utility facilities without reservation of an easement therefor constitutes an unlawful taking of private property, or an exercise of regulatory control has been legislatively answered by the statutory mandate that the easement be reserved. Unreserved, the extinguishment thereof without compensation would constitute an unauthorized taking of private property. This question was saved for review because, as noted by the trial judge, when the vacation proceedings were instituted by the city, "both Bell and Edison appeared and objected insofar as the proposed vacations affected streets and alleys in which their installations were located, unless easements were reserved for them in these same streets." The controlling legislative enactment is consistent with the general principle underlying this whole controversy.

The rule was clearly stated in *In re Brewster Street Housing Site,* 291 Mich 313, 342:

"Where property is taken for public health and safety, it cannot be taken without compensation, and there is no distinction between the power of eminent domain and the police power in this regard. Russell, Police Power of the State, p 86. In this case, the legislation involved is upheld under the police power of the State. But, if private property is to be taken for the purpose of carrying out the project in question, such property may be acquired against the will of its owner only by the exercise of the power of eminent domain. The power of eminent domain may be lawfully resorted to when authorized by the legislature to take the property of private individuals for purposes justifiable only under the police power of the State."

The inclusion of the traditional words accompanying an exercise of the police power in the statute requiring the reservation of utility easement, viz., *"it is hereby deemed necessary for the health, welfare, comfort and safety of the public to reserve an easement therein for the use of public utilities"* leave no doubt as to the public policy of the State.

For the reasons herein set forth the order of the trial court should be affirmed. No costs, a public question being involved.

Dethmers, J., concurred with O'Hara, J.

Black, J., concurred in result.

Smith, J. After acquiring by eminent domain approximately 73 acres of lands and buildings for redevelopment purposes under the rehabilitation of blighted areas act (hereinafter referred to as the RBA act), PA 1945, No 344, as amended (CL 1948 and CLS 1961, § 125.71 *et seq.* [Stat Ann 1958 Rev

and Stat Ann 1963 Cum Supp § 5.3501 *et seq.*]), the city of Detroit instituted these proceedings in separate suit to vacate certain plats and streets and alleys pursuant to a development plan. These proceedings to vacate were brought under sections of the plat act, PA 1929, No 172, § 59 *et seq.*, as amended (CL 1948 and CLS 1961, § 560.59 *et seq* [Stat Ann 1953 Rev and Stat Ann 1961 Cum Supp § 26.489 *et seq.*]). The utilities, Michigan Bell and Detroit Edison, objected to vacation of certain streets and alleys in the blighted area in which their facilities were installed unless "easements" were reserved "to maintain their poles, wires and other equipment in their present locations in such streets and alleys." In lieu thereof, the utilities sought costs from the city for relocating such facilities to other places in the development area as designated in the plan.

As part of said development plan are three maps comprising part of exhibit A and denominated 7, 8, and 9. These maps show graphically the elaborate planning performed by the city of Detroit to provide for both overhead and underground utility facilities in the area under redevelopment. From the maps it is plain that use of existing as well as new facilities was projected. The maps also indicate the utilities themselves as the source of at least some of the planning. It is not claimed by the utilities that relocation of facilities to other designated places within the redevelopment area will interfere with their obligations to serve customers either in the development area or beyond. The stage is set, therefore, for the crucial question. Is the city required to pay the utilities relocation costs?

The opinion of Mr. Justice O'Hara, affirming the trial court judgment, is grounded upon a construction of the plat act. We counter this rationale herein, although other points in his opinion might be

considered more dispositive of the case, had he
written for reversal as we do. Both utilities advert
to the plat act in a manner as follows. Michigan
Bell says that, although the trial court did not reach
the proposition, it is entitled to prevail "for the
additional reason" that the plat act requires reser-
vation of "easements" and, Michigan Bell adds, that
in lieu thereof it is entitled to reimbursements for
the costs of relocation. In similar, but even briefer
statement, Detroit Edison asserts that reservation
of the "easements" is required under the act; how-
ever, it does not assert in its brief that alternatively
relocation costs are required by the act. Significant-
ly, the act itself makes no mention of relocation
costs.

Mr. Justice O'Hara says that "strictly speaking"
the rehabilitation of blighted areas act is not in-
volved, only the plat act. However, both utilities
say that the RBA act is involved, at least to some
extent. Our conclusion is that both acts must be
construed together as statutes *in pari materia,* for
reasons which follow.

Statutes *in pari materia* are those which relate to
the same person or thing, or the same class of per-
sons or things, or which have a common purpose.
It is the rule that in construction of a particular
statute, or in the interpretation of its provisions,
all statutes relating to the same subject, or having
the same general purpose, should be read in connec-
tion with it, as together constituting one law, al-
though enacted at different times, and containing
no reference one to the other. *Rathbun* v. *State of
Michigan,* 284 Mich 521; *Palmer* v. *State Land Of-
fice Board,* 304 Mich 628; *Wayne County* v. *State
Department of Social Welfare,* 343 Mich 475.

There is no gainsaying that the rehabilitation of
blighted areas act and the plat act, in pertinent

parts, are statutes *in pari materia.* In the RBA act, one of the characteristics of a blighted area is defined[1] as part of a municipality in which there is an improper division or arrangement of lots and ownerships of streets and other open spaces. This suggests, among other things, the necessity for vacating streets, et cetera, when the occasion demands. Further on in the act, reference is made to "easements" for sewers, public lighting, water, gas, or other similar utilities. Still further, in reference to a development plan, the act provides that:

"The plan shall designate the location, extent, character and estimated cost of the improvements contemplated for the area; and may include any or all of the following improvements:

"Partial or total vacation of plats, or replatting; opening, widening, straightening, extending, vacating or closing streets, alleys or walkways; locating or relocating water mains, sewers, or other public or private utilities." CLS 1961, § 125.74 (Stat Ann 1958 Rev § 5.3504).

So much for references to the RBA act. Then compare this with pertinent sections of the plat act. Circuit courts are authorized upon proper application, to alter or vacate, and to correct or revise plats. Vacation, if objected to, must be shown to be necessary for the "health, welfare, comfort and safety of the public", the act reads. Then on to that crucial portion of the plat act upon which Mr. Justice O'Hara plants his opinion.

"If the petition before the court involves the vacation of any alley, street or other public place then being used by any public utility for public utility purposes, *it is hereby deemed necessary for the health, welfare, comfort and safety of the public to reserve an easement therein for the use of public*

---

[1] CLS 1961, § 125.72 (Stat Ann 1958 Rev § 5.3502).—Reporter.

*utilities,* and it is hereby confirmed that the court has the authority to reserve such an easement. The foregoing provision shall not be deemed to limit the authority of the court to reserve easements for the use of the public utilities in other cases required or consistent with the health, welfare, comfort or safety of the public, including a situation where a public utility is not then making an actual use of the area to be vacated." (CLS 1961, § 560.62 [Stat Ann 1963 Cum Supp § 26.492].) (Emphasis supplied.)

From reviewing pertinent parts of the two statutes, it would appear that at least insofar as vacation of plats, streets, and alleys is concerned, the statutes relate to the same general subject. It might be said that by the RBA act, we are directed to several conditions under which vacations should be accomplished, whereas the plat act gives the tool, or shows how it may be accomplished. We conclude, therefore, that the statutes are *in pari materia* and should be so construed.

When construed together, we hold that the statutes do not require, in circumstances such as these, a municipality to reserve "easements" in streets and alleys sought to be vacated. It is true, as Mr. Justice O'Hara suggests, the plat act provisions seem to require reservations of "easements", in place, for utility purposes where previously so used. However, strict construction of a statute should not be followed where such construction would defeat the main purpose of other statutes relating to the same subject. *Rathbun* v. *State of Michigan, supra.*

The *Rathbun Case* involved, *inter alia,* an interpretation of supposed conflicting provisions of the general property tax act (PA 1893, No 206, § 131, as amended)[2] and the public domain act (PA 1909,

---

[2] See CL 1948, § 211.131 (Stat Ann 1960 Rev § 7.188).

No 280, as amended).[3]   Plaintiff's grantor had claimed that the reservation of mineral rights to the State in a homestead deed was contrary to the general property tax law which provided that "Such deed shall convey an absolute title to the lands sold." Holding the statutes to be *in pari materia,* this Court ruled that the later enacted public domain act did not amend or repeal the general property tax law. The public domain act was said (pp 545, 546) to indicate a growth of general public policy with regard to the conservation of resources and, therefore, that the State acted properly in severing (p 536) "absolute fee in the surface rights from the absolute fee in the mineral rights." In the law related to statutory construction the case is cited, and properly so, for at least these two general propositions: (1) statutes will be construed if possible so that other statutes relating to the same subject may be given effect; and (2) strict construction of a statute should not be followed where it would defeat the main purpose of other statutes relative to the same subject. Of similar holding is *Auditor General* v. *Stevens,* 291 Mich 658, wherein certain tax moratorium statutes were harmoniously construed *in pari materia* with statutes comprising parts of the general tax law. To hold that in every single instance the plat act requires in vacation proceedings a reservation of "easements", in place, for public utilities is to place an unduly strict interpretation upon plat act provisions and also is to ignore basic differences between comprehensive redevelopment planning, on the one hand, and isolated instances of street and alley vacation, on the other. The former involves fundamental redesign of an entire area, including utility service facilities. In such case many utility facilities are, as here, re-

---

[3] See CL 1948, § 322.202 *et seq.* (Stat Ann 1958 Rev § 13.431 *et seq.*).

tained. Other facilities may need to be redesigned to serve new customers with new service demands in the redeveloped area; while yet other facilities may have to be rerouted, if service is to be provided new customers in new locations at convenient outlets. We may say, therefore, that for comprehensive redevelopment planning under the RBA act, provisions are made for both the creation and the retention, where necessary, of places in the public right-of-way for utility facilities. On the other hand, where no broad area redevelopment is pursued under the RBA act, or similar statutes, and, hence, there is no requirement, statutory or otherwise, for comprehensive facility redesign or rerouting, it seems that in an isolated instance of street or alley vacation some provision may need to be made for retention of space in the vacated public right-of-way for utility facilities, to insure continuity of service. This is what the reservation of "easements" in the plat act is intended to provide. We hold that under present circumstances, "easements" were not required to be reserved. If such were not required, then the city, under its stipulation with the utilities, is not required to pay relocation costs.

One thing more needs to be said. Justice O'HARA writes that reservation of an "easement" is required because the plat act says so, and if "unreserved, the extinguishment thereof without compensation would constitute an unauthorized taking of private property." Holding, as we do, contrary to Justice O'HARA's premise that the plat act requires, under the circumstances, reservation of "easements", the conclusion follows that if no reservation is required then the refusal to reserve cannot be considered extinguishment of the easement. Refusal to grant a nonexistent right does not constitute an extinguishment.

It should be added that this decision should not be construed as ordaining payment of relocation costs in lieu of "easements", as such may be required by language of the plat act. This question was not presented. We take note simply of the fact that the plat act contains no express provision for payment in lieu of reservation.

We are in substantial agreement with those portions of Mr. Justice O'Hara's opinion wherein he discusses propositions I, II, and III. It is his discussion of the fourth point or proposition with which we disagree, especially as he interprets and applies aforementioned vacation provisions of the plat act.

We vote for reversal. No costs, a public question being involved.

Kavanagh, C. J., and Kelly and Souris, JJ., concurred with Smith, J.

Adams, J., took no part in the decision of this case.