YOUNG, J.
We granted leave to appeal in this case to reconcile plaintiffs constitutional authority to exercise “reasonable control” over its streets with the Michigan Public Service Commission’s (MPSC) broad regulatory control over public utilities. Consistent with our longstanding precedent, we hold that a municipality’s exercise of “reasonable control” over its streets cannot impinge on matters of statewide concern nor can a municipality regulate in a manner inconsistent with state law. In this case, the MPSC has promulgated uniform rules governing the relocation of utility wires underground. To the degree plaintiffs ordinance on this subject conflicts with the MPSC’s rules, the ordinance exceeds plaintiffs power to exercise “reasonable control” over its streets and is invalid. Furthermore, because the question of allocation of costs for the relocation of utility wires underground falls under the primary jurisdiction of the MPSC, that entity should be the first to consider this dispute. We reverse the judgment of the Court of Appeals and remand to the Wayne Circuit Court to enter an order granting summary disposition to defendant. The dismissal is without prejudice to plaintiffs right to seek a remedy before the MPSC.
*113 FACTS AND PROCEDURAL HISTORY
In the fall of 1999, the City of Taylor (plaintiff) and the Michigan Department of Transportation planned for a major reconstruction project of a four-mile portion of Telegraph Road that intersects the city. The project called for major infrastructure improvements, including the underground relocation of all utility wires along Telegraph Road. Under the proposal, the Detroit Edison Company’s (defendant) utility poles along Telegraph Road would be removed and their wires relocated underground. In early 2000, officials from plaintiff and defendant met several times to discuss the project and its implementation.
Defendant agreed to relocate the lines underground, but would not agree to bear the costs of that effort. When the parties’ negotiations failed, plaintiff enacted Taylor Ordinance 00-344, the “Telegraph Road Improvement and Underground Relocation of Overhead Lines Ordinance.” Section 3 of that ordinance requires all public utilities with lines or poles adjacent to Telegraph Road “to relocate underground all of their overhead lines and wires and remove all poles and related overhead facilities equipment at their sole cost and expense and at no cost or expense to the City.”[1] After plaintiff enacted the ordinance, the parties continued to discuss the dispute, but could not come to an amicable resolution. Ultimately, plaintiff agreed to advance the cost of relocating the wires underground, but reserved its rights to enforce the ordinance against defendant and seek reimbursement.
In June 2002, plaintiff filed a complaint for a declaratory judgment in circuit court, seeking a determination that defendant was obligated to pay the entire cost of *114 relocating the wires under Taylor Ordinance 00-344. Defendant moved for summary disposition under MCR 2.116(C)(4), arguing that the MPSC rules required plaintiff to pay for the relocation, and that the MPSC had primary jurisdiction over this dispute. Plaintiff filed a cross-motion for summary disposition under MCR 2.116(0(10), arguing that the ordinance controlled. The circuit court granted summary disposition to plaintiff, holding that it was unnecessary to consider the issue of primary jurisdiction because the city’s ordinance was enforceable regardless of the MPSC’s interpretation of its rules.
On appeal, the Court of Appeals affirmed in part the judgment of the circuit court in a published opinion per curiam.[2] The Court held that the MPSC did not have primary jurisdiction because the question was one of law, and the courts could craft an answer that would promote uniformity without interfering with the MPSC’s ability to perform its regulatory duties. Then, relying on its governmental function/proprietary function test, first articulated in City of Pontiac v Consumers Power Co,[3] the Court determined that plaintiff exercised a governmental function and properly required defendant to bear the entire cost of relocation. The Court also determined that state law did not preempt the city’s ordinance.
This Court granted leave to appeal, specifically directing the parties to address the scope of a city’s power over utilities under its constitutional authority to exercise reasonable control over its streets; whether that constitutional authority permits a city to impose relocation costs on utilities under Const 1963, art 7, § 29, and how the city’s constitutionally authorized power to *115 control its streets could be reconciled with the MPSC’s broad regulatory authority over utilities.[4]
STANDARD OF REVIEW
This Court reviews the decision to grant or deny a motion for summary disposition de novo.[5] Issues of constitutional and statutory construction are questions of law that are also reviewed de novo.[6]
ANALYSIS
THE CITY’S CONSTITUTIONAL AUTHORITY
Article 7 of the Constitution of 1963 enumerates the general authority and limits on the authority of local governments, such as counties, townships, cities, and villages.[7] Subject to authority specifically granted in the Constitution, local governments derive their authority from the Legislature.[8]
[9]We have held that
“[local governments] have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting by a delegated authority; so that while the State legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant.”[9]
*116 Notwithstanding that local governments obtain their authority from the Legislature, the Constitution reserves to local governments certain authorities. In this case, plaintiff relies on the authority to exercise reasonable control over its streets, which is specifically reserved in art 7, § 29, which states:
No person, partnership, association or corporation, public or private, operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village; or to transact local business therein without first obtaining a franchise from the township, city or village. Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government.[10]
Thus, the authority reserved to local units of government to exercise reasonable control over the enumerated subject areas is explicitly made subject to the other provisions of the Constitution. One such provision is art 7, § 22, which empowers cities and villages “to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law.” [11]
In People v McGraw,[12] this Court interpreted the similarly worded “reasonable control” predecessor of art 7, § 29 found in the 1908 Constitution,[13] along with the predecessor of art 7, § 22, the provision regarding *117 municipal powers.[14] McGraw involved traffic ordinances enacted by the City of Detroit that conflicted with the general state traffic laws. This Court held that “[t]aking the [constitutional] sections together, they should be so construed as to give the power to municipalities to pass such ordinances and regulations with reference to their highways and bridges as are not inconsistent with the general State law.”[15] Thus, McGraw permits a city to exercise “reasonable control” *118 to regulate matters of local concern, but only in a manner and to the degree that the regulation does not conflict with state law.
In 1939, the Legislature created the MPSC, giving it broad regulatory authority over public utilities. Under its enabling statute,
[t]he public service commission is vested with complete power and jurisdiction to regulate all public utilities in the state except... as otherwise restricted by law. The public service commission is vested with the power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of public utilities. The public service commission is further granted the power and jurisdiction to hear and pass upon all matter pertaining to, necessary, or incident to the regulation of public utilities ... .[16]
In 1970, the MPSC promulgated rules governing the underground placement of new and existing utility wires.[17] Specifically, the MPSC promulgated Rule 460.516, governing the “ [replacement of existing overhead lines,” and Rule 460.517, concerning “[underground facilities for convenience of utilities or where required by ordinances.”[18] These rules appear to cover the same subject matter as Taylor Ordinance 00-344, and in a manner that possibly creates a conflict between the MPSC’s rules and the plaintiffs ordinance. Because the MPSC has not construed how its rules governing the allocation of costs for the underground relocation of utility wires apply in this circumstance, and because provisions of the ordinance appear to fall within the MPSC’s regulatory purview, the MPSC, rather than a *119 court, should assess whether there is an actual conflict. As discussed later in this opinion, the doctrine of primary jurisdiction requires us to defer to the judgment of the MPSC on this question. If the ordinance conflicts with MPSC rules, then under art 7, §§ 22 and 29, and McGraw, Taylor Ordinance 00-344 must yield.
The cases from this Court relied on by the Court of Appeals and plaintiff are readily distinguishable from the present case. As an initial matter, all the cases from this Court holding that a municipality has the power to force a utility to relocate its facilities at its own expense were decided before the MPSC’s promulgation of rules regarding the underground relocation of wires.[19] Thus, there was no state law for the municipal action to conflict with. To the extent these cases conflict with the MPSC’s interpretation of its rules, however, they are abrogated. Moreover, no case cited is factually analogous. For example, the Court of Appeals cited this Court’s opinion in Detroit Edison Co v Detroit[20] for the proposition that this Court “ruled that the city of Detroit could order the utility to move its poles at its own expense under the municipality’s constitutional right to control public places.”[21] In Detroit Edison, the utility erected poles on an easement granted to the city for public utilities. The utility claimed exclusive control over the easement because the grantor dedicated it for utilities rather than public use. This Court held that the utility easement fell under the “public places” language of article 8, § 28 of the 1908 Constitution. However, the Court did not rely on that constitutional provision in *120 holding that the city could require the utility to pay to move the poles. Rather, the Court relied on the utility’s concession that it would be liable if the easement was determined to be a “public place.”[22] Therefore, Detroit Edison does not support plaintiffs argument or the holding of the Court of Appeals.[23]
As noted, the precedent that governs the resolution of this case is McGrow. Because Taylor Ordinance 00-344 may conflict with MPSC rules, it may not be a valid exercise of plaintiffs reasonable control over its streets. Therefore, if the portion of the ordinance that requires the utility to bear the entire cost of relocation conflicts with the MPSC rules on the subject, that portion of the ordinance is invalid. We reverse the Court of Appeals judgment that held to the contrary.
THE COURT OF APPEALS TEST
In reaching its holding, the Court of Appeals did not focus on the question of “reasonable control.” Instead, the Court of Appeals relied on a “general rule that relocation costs may be imposed on the utility if necessitated by the municipality’s discharge of a governmental function, while the expenses must be borne by the *121 municipality if necessitated by its discharge of a proprietary function.”[24] This “general rule” appears to emanate from City of Pontiac v Consumers Power Co,[25] and is derived from McQuillin, Municipal Corporations, § 34.74(a), p 184. While many Michigan Court of Appeals cases have applied the “general rule,” [26] there is no support for it in either our statutes or Constitution. The proper “general rule,” which has been inexplicably ignored by the Court of Appeals, was articulated by this Court in McGraw nearly 100 years ago. Today, we reaffirm the holding and standard articulated in McGraw as being consistent with the modern constitutional provisions of the analogues of these provisions it construed: A municipality may regulate “highways, streets, alleys, and public places” to the degree such regulations are consistent with state law. We overrule the Court of Appeals cases that apply the proprietary function/governmental function test in this area of the law.[27]
primary jurisdiction
Having decided that plaintiffs effort to compel defendant’s compliance by decree may contravene the authority of the MPSC, we next address whether the MPSC has primary jurisdiction over the dispute about the allocation of the costs of relocating the wires under *122 ground.[28] There is no fixed formula, but there are several factors to consider in determining whether an administrative agency has primary jurisdiction over a dispute: (1) whether the matter falls within the agency’s specialized knowledge, (2) whether the court would interfere with the uniform resolution of similar issues, and (3) whether the court would upset the regulatory scheme of the agency.[29] The Court of Appeals analyzed these three factors and determined that the MPSC did not have primary jurisdiction over the dispute. We disagree.
The fundamental error in the Court of Appeals analysis is that the court applied the Travelers factors to the question of the city’s constitutional authority to exercise reasonable control over its streets. We agree that the MPSC has absolutely no jurisdiction to consider the scope of plaintiffs constitutional authority under art 7, § 29.[30] As discussed earlier in this opinion, McGraw articulates the proper standard for resolution of the constitutional issue. Once the constitutional issue has been resolved, the Travelers factors are applied to determine whether the MPSC has primary jurisdiction over the issue of how to allocate the costs of relocating the lines underground.
Applying the first factor, the appropriate method for allocating the cost of moving the facilities of utilities is *123 clearly within the expertise of the MPSC. Additionally, the MPSC is in the best position to interpret and apply its own rules on this subject. Regarding the second factor, the MPSC arguably has devised a uniform system for removing overhead lines and allocating the associated costs. Because the expense incurred in complying with plaintiffs demands may potentially affect a wide range of ratepayers, most of whom do not reside in the City of Taylor, this is an area of law where uniformity is critical. Finally, under the third factor, the decision of the City of Taylor appears directly to implicate the rate-making authority of the MPSC and defendant’s tariffs created under that authority. Given the MPSC’s broad authority to regulate public utilities, and its promulgation of rules pertaining to the relocation of overhead lines underground, the circuit court’s resolution of this case could adversely affect the MPSC’s ability to carry out its regulatory responsibilities. Because application of the Travelers factors overwhelmingly favors the MPSC, that agency has primary jurisdiction to determine the proper allocation of costs associated with relocating the wires underground. Accordingly, the circuit court should have granted defendant’s motion to dismiss and required plaintiff to seek a remedy from the MPSC.
CONCLUSION
Today, we reaffirm this Court’s decision in McGraw. Under Const 1963, art 7, §§ 22 and 29, a local unit of government may exercise reasonable control over its “highways, streets, alleys, and public places” as long as that regulation does not conflict with state law. Here, because plaintiff’s ordinance may be incongruent with the MPSC’s regulations governing underground relocation of wires, and the regulation of defendant utility, the *124 ordinance may be invalid. MCL 460.6 vests the MPSC with broad authority to regulate public utilities, and the MPSC has promulgated rules on this subject. Accordingly, we conclude that the MPSC has primary jurisdiction over the issue of cost allocation.
We reverse the judgment of the Court of Appeals and remand to the Wayne Circuit Court to grant summary disposition to defendant. Plaintiff may seek a remedy concerning the costs of relocating defendant’s wires underground from the MPSC.
Taylor, C.J., and Weaver, Corrigan, and Markman, JJ., concurred with YOUNG, J.
CAVANAGH, J., concurred in the result only.

 Taylor Ordinance 00-344.

 263 Mich App 551; 689 NW2d 482 (2004).

 101 Mich App 450; 300 NW2d 594 (1980).

 474 Mich 877 (2005).

 Spiek v Dep’t of Transportation, 456 Mich 331; 572 NW2d 201 (1998).

 Wayne Co v Hathcock, 471 Mich 445; 684 NW2d 765 (2004).

 Const 1963, art 7.

 Const 1963, art 7, §§ 1, 17, and 21.

 City of Kalamazoo v Titus, 208 Mich 252, 262; 175 NW 480 (1919), quoting 1 Cooley, Constitutional Limitations (7th ed), pp 163, 264 et seq.

 Const 1963, art 7, § 29 (emphasis added).

 Const 1963, art 7, § 22 (emphasis added).

 184 Mich 233; 150 NW 836 (1915), interpreting Const 1908, art 8, §§ 21 and 28.

 Const 1908, art 8, § 28 provided:
*117 No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks, or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of then-streets, alleys and public places is hereby reserved to such cities, villages and townships.
The differences between this section and Const 1963, art 7, § 29 are relatively minor. In addition to stylistic changes, counties are added to the list of municipalities; the list of items that public places can be used for now includes the general “other utility facilities”; and the reservation of power to municipalities is explicitly subject to other provisions of the Constitution.

 Const 1908, art 8, § 21 provided:
Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this state.
The differences between this section and Const 1963, art 7, § 22 are also relatively minor. Besides the stylistic changes, the section merely reaffirms that a city’s or a village’s powers are subject to the general laws of the state.

 McGraw, supra at 238.

 MCL 460.6 (emphasis added).

 1999 AC, R 460.511 et seq.

 See titles of 1999 AC, R 460.516 and 460.517

 See City of Monroe v Postal Tel Co, 195 Mich 467; 162 NW 76 (1917), Detroit Edison Co v Detroit, 332 Mich 348; 51 NW2d 245 (1952), and Detroit v Michigan Bell Tel Co, 374 Mich 543; 132 NW2d 660 (1965).

 332 Mich 348; 51 NW2d 245 (1952).

 263 Mich App at 558, citing Detroit Edison.

 Detroit Edison, supra at 354-355. The dissent has created a doctrine of “perpetual concession” and would bind Edison to a concession it made 50 years ago in unrelated litigation. Merely stating the dissent’s position shows why it has never had any basis in our jurisprudence.

 The case relied on by the dissent, City of Monroe v Postal Tel Co, supra, also does not support the Court of Appeals conclusion. Monroe involved a federal statute, the Post Road Act of 1886, which gave telegraph companies the right to construct telegraph lines along any United States post road. The issue before the Court was whether the federal statute limited the state’s ability to exercise control over the lines. This Court determined, consistently with other jurisdictions, that the federal statute was permissive and subject to the states’ police power. Not surprisingly, Monroe did not mention or utilize Const 1908, art 8, § 28 or McGrow in its resolution of the case.

 263 Mich App at 557-558.

 101 Mich App 450; 300 NW2d 594 (1980).

 Pontiac, supra at 453-454, was cited in Detroit Edison Co v Detroit, 180 Mich App 145; 446 NW2d 615 (1989) (expansion of Cobo Hall), and Detroit Edison Co v Southeastern Michigan Transportation Auth, 161 Mich App 28; 410 NW2d 295 (1987) (public transit system); see also Michigan Bell Tel Co v Detroit, 106 Mich App 690; 308 NW2d 608 (1981) (sewer treatment facility).

 See n 26, supra.

 The dissent discusses preemption at length. We cannot discern why. Our opinion does not mention preemption, much less rely on the doctrine, and it plays no role in our disposition of this case.

 Travelers Ins Co v Detroit Edison Co, 465 Mich 185, 198-200; 631 NW2d 733 (2001); see also Rinaldo’s Constr Co v Michigan Bell Tel Co, 454 Mich 65, 71-72; 559 NW2d 647 (1997).

 As stated in Wikman v City of Novi, 413 Mich 617, 646-647; 322 NW2d 103 (1982), “Generally speaking, an agency exercising quasi-judicial power does not undertake the determination of constitutional questions or possess the power to hold statutes unconstitutional.”