# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

HAR COMPANY, LLC, KEN IRISH,
MARGARET IRISH, JACK KUIPERS, JANE
KUIPERS, Individually and as Trustee of JANE
KUIPERS TRUST, JMK HOLDINGS, LLC,
DOUG MAXWELL, Individually and as Trustee
of the DOUGLAS E. MAXWELL 2000 TRUST,
MICKI MAXWELL, Individually and as Trustee
of the MICKI MAXWELL 2000 TRUST, WARD
SQUIRES and HENRIETTA SQUIRES,

       Appellants,

v

MICHIGAN ELECTRIC TRANSMISSION
COMPANY,

       Petitioner-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION,

       Appellee.

UNPUBLISHED
November 18, 2014

No. 317872
MPSC
LC No. 00-017041

---

CHARTER TOWNSHIP OF OSHTEMO,

       Appellant,

v

MICHIGAN ELECTRIC TRANSMISSION
COMPANY LLC,

       Petitioner-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION,

No. 317893
MPSC
LC No. 00-017041

-1-

Appellee,

and

MICHIGAN TOWNSHIPS ASSOCIATION,
MICHIGAN MUNICIPAL LEAGUE, PUBLIC
CORPORATION LAW OF THE STATE BAR OF
MICHIGAN, MICHIGAN COALITION TO
PROTECT PUBLIC RIGHTS-OF-WAY,
MICHIGAN CABLE TELECOMMUNICATIONS
ASSOCIATION, and MICHIGAN ENERGY
PROVIDERS GROUP,

Amici Curiae.

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

In these consolidated cases appellants Landowners[1] and Charter Township of Oshtemo appeal as of right an order of the Michigan Public Service Commission (PSC) approving the application of Michigan Electric Transmission Company, LLC (METC) for a certificate of public convenience and necessity (CPCN) for construction of an overhead transmission line. We affirm in both cases and lift the stay imposed pending appeal of these cases.

## I. Background

The Legislature enacted the Electric Transmission Line Certification Act (Act 30), 1995 PA 30, effective May 17, 1995, to regulate the construction and location of certain electric transmission lines. Act 30 provides that if an electric utility with 50,000 or more residential customers plans to construct a major transmission line,[2] the utility must submit a plan to the PSC and may not begin construction on the line until the PSC has issued a CPCN. MCL 460.565. A

---

[1] Appellants in Docket No. 317872, Har Company, LLC, Ken Irish, Margaret Irish, Jack Kuipers, Jane Kuipers, Individually and as Trustee of the Jane Kuipers Trust, JMK Holdings, LLC, Doug Maxwell, Individually and as Trustee of the Douglas E. Maxwell 2000 Trust, Micki Maxwell, Individually and as Trustee of the Micki A. Maxwell 2000 Trust, Ward Squires, and Henrietta Squires, will be referred to collectively as the Landowners.

[2] A major transmission line is "a transmission line of 5 miles or more in length wholly or partially owned by an electric utility, affiliated transmission company, or independent transmission company through which electricity is transferred at system bulk voltage of 345 kilovolts or more." MCL 460.562(g).

utility that wishes to construct a transmission line[3] other than a major transmission line may, but is not required to, submit an application for a CPCN to the PSC. If the utility applies for a CPCN, the utility may not begin construction on the transmission line until the PSC has issued a CPCN. MCL 460.569(1). With one exception, "the provisions of this act that apply to applications and certificates for major transmission lines apply in the same manner to applications and certificates issued under this section." MCL 460.569(2). The PSC proceeds in the same manner on both mandatory and voluntary applications. MCL 460.569(2). A CPCN takes "precedence over a conflicting local ordinance, law, rule, regulation, policy, or practice that prohibits or regulates the location or construction of a transmission line for which the commission has issued a certificate." MCL 460.570(1). In addition, Act 30 controls "in any conflict between this act and any other law of this state." MCL 460.563(2).

## II. Underlying Facts and Proceedings

METC proposed the construction of a new transmission line; however, Oshtemo Township amended its utility control ordinance to require METC to prove the necessity of the proposed line and receive Township approval before beginning construction of the line. In addition, the ordinance required METC to locate the proposed line underground in any area in which the line would come within 250 feet of a public right-of-way. METC filed an application with the PSC seeking a CPCN "for the construction of two double-circuit 138 kilovolt ("kV") transmission lines on a 220-foot right-of-way running through Oshtemo Township, Kalamazoo County, and an electrical transmission substation in Almena Township, Van Buren County. METC asserted that the issuance of a CPCN would take precedence over any conflicting local ordinance.

Evidence produced at the evidentiary hearing showed that the parties had conflicting views regarding the efficacy of METC's proposed project. A witness for METC testified that the Kalamazoo area was served by three 345/138 kV transformers located at the Argenta substation. METC's proposal to add additional lines and a new substation at Weeds Lake would enable METC to comply with national mandatory planning criteria.

METC's witness stated that METC considered two alternative routes for the lines, but rejected them because they failed to meet planning criteria. METC considered the option of adding a fourth transformer at the Argenta substation, but rejected that option because it would not protect against the risk that the entire substation could be disconnected from the 345kV power source or the 138kV transmission lines that served an area that included Kalamazoo and Battle Creek.

A witness for Oshtemo Township testified that the Township preferred two identified alternative routes over METC's preferred route because the alternative routes relied in part on public lands and an existing corridor and would impose less of a burden on private property owners.

---

[3] A transmission line is "all structures, equipment, and real property necessary to transfer electricity at system bulk supply voltage of 100 kilovolts or more." MCL 460.562(k).

A witness for the Landowners testified that the quantifiable and nonquantifiable benefits of the proposed project did not offset the detriments, including the cost of the project, the adverse impact caused by locating the project close to private residences, and the loss of woodlands and croplands. The witness maintained that the installation of a fourth transformer at the Argenta substation would cost less but would achieve results comparable to METC's proposed project. The witness also asserted that an alternative referred to as B Avenue was preferable to METC's Weeds Lake proposal because it required only one transmission line and power flow control protectors could guard against unbalanced power flows.

The PSC issued an order granting METC a CPCN for the construction of METC's proposed transmission line along METC's preferred route. The PSC noted that the "most contentious issue in this case is whether METC sufficiently demonstrated that the quantifiable and nonquantifiable public benefits of the project justify its construction." The PSC found that "a formal benefit/cost analysis of the project is not strictly required; however, it appears that the most straightforward way to demonstrate that a project's benefits justify its construction, as the Commission must find under section 8(5)(a), is through the submission of at least some reasonable estimate of the value of benefits of the project."

The PSC found that the record established that two realistic proposals existed to address the contingency issue: 1) the Weeds Lake proposal, estimated by METC to cost $45 million, and (2) the B Avenue proposal put forth by the Landowners, and estimated to cost $37 to $47 million. The PSC stated:

> . . . The Landowners presented evidence that the value of the benefit of increased efficiency resulting from the Weeds Lake Project was $1.3 million per year, thus offsetting the difference in cost between the two proposals by that amount. In addition, METC identified, but did not quantify, the benefits of 500 MW of additional capacity and the establishment of a geographically separate and distinct source of power for the Kalamazoo area, thus resulting in a more robust system and addressing a NERC Category D contingency. As the Staff pointed out, while a NERC Category D contingency is unlikely, the costs to businesses, industry, and residents in the event of the loss of the lines to the Argenta station are potentially catastrophic. The Commission notes that the costs to Kalamazoo and Battle Creek area customers, in the event of a loss of the lines to the Argenta station, are certainly higher that the minor cost difference between the Weeds Lake project, which would provide a geographically distinct source of power, and the B Avenue alternative, which would not.
>
> The Commission recognizes that transmission infrastructure can provide a host of benefits, both in economic and reliability terms, some of which are more easily quantified than others. The Commission also sees value in planning for the longer term and designing projects that provide comprehensive system benefits, even if there are incremental costs for a more robust transmission solution. In this case, the proposed project is clearly needed and the alternatives proposed by Landowners, while potentially feasible, do not provide comparable benefits. Moreover, the associated cost savings are not entirely clear or less costly than the proposed project after including the ancillary upgrades. Therefore, the

Commission finds it appropriate to approve the CPCN because the overall benefits justify construction and there is a clear need to proceed with construction to maintain reliability.

The PSC agreed with METC's assertion that MCL 460.568(5)(b) did not require the finding of the best or most reasonable route. The PSC also found that METC presented ample evidence that the I-94 route was not a realistic alternative to the Weeds Lake Project.

The PSC found that under MCL 460.563 and MCL 460.570, the grant of a CPCN to METC preempted Oshtemo's ordinance. In addition, the PSC found that Oshtemo Township, not METC, had the burden of demonstrating the cost and practicality of placing a portion of the transmission line underground and that the Township failed to carry its burden.

## III. Standard of Review

The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecommunications Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Public Service Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Public Service Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

The court gives due deference to the PSC's administrative expertise and does not substitute its judgment for that of the PSC. *Attorney General v Public Service Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and we will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the PSC's construction serves as an aid to determining the legislative intent and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the PSC is not binding on us. *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 103-109; 754 NW2d 259 (2008). Whether the PSC exceeded the scope of its authority is a question of law that we review de novo. *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

"Issues of constitutional and statutory construction are questions of law that [this Court reviews] de novo." *Lansing v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006).

## IV. Analysis

## A. Docket No. 317872

On appeal, the Landowners argue that the PSC did not follow the requirements of Act 30, and in particular MCL 466.568, in making its decision. METC was required to prove that the quantifiable and nonquantifiable benefits of its proposed Weeds Lake Project justified the construction of the project. METC was required to prove that a new transmission line was needed; however, METC stated only that the line was needed to address a reliability issue that could arise if two of the three transformers at the Argenta substation became unavailable at the same time. The PSC erred by granting METC's application for a CPCN. We disagree.

The PSC is required to issue a CPCN if it makes certain determinations. MCL 460.568(5) provides:

> (5) The commission shall grant the application and issue a certificate if it determines all of the following:

> (a) The quantifiable and nonquantifiable public benefits of the proposed major transmission line justify its construction.

> (b) The proposed or alternative route is feasible and reasonable.

> (c) The proposed major transmission line does not present an unreasonable threat to public health or safety.

The Landowners argued that METC did not prove that the proposed transmission line was needed. However, MCL 460.568(5) does not specifically state that an applicant for a proposed transmission line must prove that the line is needed.[4] Nevertheless, the PSC found that METC's proposed transmission line was needed to address a reliability issue.

The PSC's finding that the Landowners' alternative plan of installing a fourth transformer at the Argenta substation was not a viable solution was supported by the requisite evidence. The Landowners countered METC's assertion that installing a fourth transformer would increase loads on other circuits by demonstrating the installation of power flow control reactors would address this issue. The PSC, however concluded that the addition of a fourth transformer at the Argenta substation would not solve the reliability issue. Most of the power for the Kalamazoo area would continue to originate from a single substation; therefore, if two or three transformers ceased to be operational, the overload on other circuits could cause blackouts. Both METC and the Landowners presented expert testimony on the viability of the fourth generator plan. The PSC was entitled to choose to accept the testimony of METC's expert even though the Landowners' expert gave contradictory testimony. *ABATE v Public Service Comm*, 192 Mich

---

[4] MCL 460.567(2)(f) states that the applicant for a CPCN must include in the application information "supporting the need for the proposed major transmission line[.]" MCL 460.568(5) contains no such language.

App 19, 27; 480 NW2d 585 (1991). The testimony of one expert constitutes substantial evidence in PSC cases. *Id.*

The PSC correctly found that METC was not required to do a cost/benefit analysis of the Weeds Lake project, even though that project was estimated to cost $32 million more than the fourth transformer project. No statute required the METC to perform a cost/benefit analysis, and the PSC was not required to make its judgment based solely on cost. The reliability issue was the primary reason for METC seeking a CPCN to install a transformation line, and the evidence showed that the fourth transformer project would not solve the reliability issue. The PSC was entitled to accept METC's evidence on this issue. *ABATE v Public Service Comm*, 192 Mich App at 27.

The PSC correctly found that METC's proposed route for the transmission line was feasible and reasonable, in spite of the fact that METC's proposed route did not get the highest score using METC's own scoring methods. MCL 460.568(5)(b) required only that the PSC find that METC's proposed route was feasible and reasonable, not that it was more feasible and more reasonable than any other route proposed by any party. The Landowners suggested that METC could have used alternatives such as a quad circuit or a tapping variant to address right-of-way concerns; the PSC correctly concluded that those alternatives were not as reliable as METC's Weeds Lake project.

Next, the Landowners argue that the PSC's approval of METC's application for a CPCN allowed METC to violate municipal zoning ordinances and to take private property from landowners without due process. We disagree.

A person cannot be deprived of property without due process of law. US Const, Am V; Const 1963, art 1, § 17. A person must be afforded notice, an opportunity to heard, and a written statement of findings. *Michigan Elec Coop Ass'n v Public Service Comm*, 267 Mich App 608, 622; 705 NW2d 709 (2005).

The METC applied for a CPCN under MCL 460.569, and held public meetings on its proposal as required by MCL 460.566(1). Moreover, the PSC conducted a contested case hearing on the METC's application; the Landowners intervened in the proceeding, as was their right under MCL 460.568(2). The Landowners fully participated in the case and were not deprived of due process during the proceedings before the PSC. *Michigan Elec Coop Ass'n*, 267 Mich App at 622.

Furthermore, we reject the Landowners' argument that the PSC's act of granting a CPCN is not subject to review and therefore denies them due process. A PSC order granting a CPCN is appealable as of right to this Court. MCL 460.575(1). A CPCN is "binding as to the public convenience and necessity for that transmission line" in "an eminent domain or other related proceeding arising out of or related to a transmission line for which a certificate is issued[.]" MCL 460.570(3). This Court does not conduct eminent domain proceedings; a CPCN is not binding on this Court.

In order to grant a CPCN to the METC, the PSC was required to find that "[t] quantifiable and nonquantifiable public benefits of the proposed major transmission line justify

its construction." MCL 460.568(5)(a). Logically, to make such a finding, the PSC would have to conclude that the proposed transmission line would fulfill a public purpose. As noted, a CPCN is "binding as to the public convenience and necessity for that transmission line" in an eminent domain case. MCL 460.570(3). Thus, the requisite showing of a public purpose would have been made before the commencement of any subsequent condemnation proceeding.

The Separation of Powers clause of the Michigan Constitution states: "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. The Landowners' argument that the PSC's decision violates the Separation of Powers clause because it allows the METC to ignore Oshtemo Township's ordinance that a portion of the transmission line be placed underground is without merit. The Legislature enacted statutes providing that a CPCN granted by the PSC preempts the Township's ordinance regarding the placement underground of transmission lines, MCL 460.570(1), and that Act 30 controls if it conflicts with any other law of this state. MCL 460.563(2). The PSC's actions were authorized by statute so they did not violate the Separation of Powers doctrine.

The Landowners have not demonstrated that the PSC erred or abused its discretion by granting METC's application for a CPCN.

B. Docket No. 317893

The appeal by Oshtemo Township and the amici brief filed by Michigan Townships Association, et al,[5] present the question whether a local ordinance can prevail over a conflicting CPCN issued by the PSC under Act 30.

The Michigan Constitution grants a municipality the right to control its public places. Const 1963, art 7, § 29 provides:

> No person, partnership, association or corporation, public or private, operating a public utility shall have a right to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village; or to transact local business therein without first obtaining a franchise from the township, city or village. Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government.

---

[5] The amici represented in the brief are American Transmission Company, DTE Electric Company, DTE Gas Company, Enbridge Energy Limited Partnership, Michigan Electric and Gas Association, Michigan Electric Cooperative Association, and Wolverine Power Supply Cooperative.

The provisions of the Michigan Constitution and state laws concerning municipalities are to be liberally construed in favor of those municipalities. Const 1963, art 7, § 34. But, the grant of authority in Const 1963, art 7, § 29 is not absolute. Const 1963, art 7, § 22 provides:

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.

In *City of Taylor v Detroit Edison Co*, 475 Mich 109; 715 NW2d 28 (2006), our Supreme Court considered whether the plaintiff's ordinance requiring the defendant to bear the cost of relocating the defendant's transmission lines underground conflicted with the PSC's authority over cost allocation in this area. The *Taylor* Court, citing Const 1963, art 7, § 29, stated that "the authority reserved to local units of government to exercise reasonable control over the enumerated subject areas is explicitly made subject to the other provisions of the Constitution." *Taylor*, 475 Mich at 116. The *Taylor* Court pointed to Const 1963, art 7, § 22 as one such provision to which a local unit of government's authority was subject. *Id*. The *Taylor* Court reasoned that a local unit of government could exercise reasonable control "to regulate matters of local concern, but only in a manner and to the degree that the regulation does not conflict with state law." *Taylor*, 475 Mich at 117-118, citing *People v McGraw*, 184 Mich 233; 150 NW 836 (1915).[6]

In *Lansing v State of Michigan*, 275 Mich App 423; 737 NW2d 818 (2007), this Court considered whether MCL 247.183(2), which permits a utility to construct transmission lines "longitudinally within limited access highway rights-of-way and under any public road, street, or other subsurface that intersects any limited access highway" without obtaining the consent of the governing municipality, was unconstitutional because it eliminated the requirement in Const 1963, art 7, § 29 that a utility must first obtain such consent. The plaintiff asserted that Const 1963, art 7, § 29 gave a municipality "the absolute right to refuse to consent to the use of" its streets by a utility. *Lansing*, 275 Mich App at 429. This Court disagreed, finding that the grant of authority in Const 1963, art 7, § 29 "is not absolute." *Id*. at 432. In addition, this Court found that because, as stated in Const 1963, art 7, § 22,

> . . . a city's authority to grant or withhold consent to use its highways, streets, alleys, and other public places can only be exercised through an ordinance or resolution, it follows that a city's ability to grant or withhold consent is also subject to the constitution and laws. Consequently, when Const 1963, art 7, §§ 22

---

[6] The *Taylor* Court concluded that the plaintiff's ordinance might conflict with PSC rules, and if so, that portion of the ordinance was invalid. In addition, the *Taylor* Court concluded that the PSC had primary jurisdiction over the issue. *Taylor*, 475 Mich at 123-124.

and 29 are read in conjunction, the Legislature has the authority to limit the manner and circumstances under which a city may grant or withhold consent under § 29. [*Id*. at 433.]

This Court found that because MCL 247.183(2) limited a local government's authority in a narrow manner, the statute was "a proper exercise of the Legislature's authority to limit the manner and circumstances under which a city may grant or withhold consent under § 29. *Id*. at 433-434.

Oshtemo Township enacted Ordinance No. 114 that required a utility seeking to construct a transmission line to place the line and all related facilities "underground within the public road right-of-way and to a point within 250 feet either side of said public right-of-way." The CPCN issued by the PSC allowed METC to construct an overhead transmission line. The PSC found that the CPCN preempted the ordinance.

Oshtemo Township argues that the PSC erred as a matter of law by failing to determine if the ordinance conflicted with state law. Oshtemo Township asserts that the ordinance does not conflict with any state law or regulations[7] because it does not regulate the construction or location of the proposed line, even though it might impose additional requirements (i.e., location of a portion of the proposed line underground).

Contrary to arguments made by Oshtemo Township and amici Michigan Townships Association, et al, the PSC did not hold that Act 30 preempted all local regulation by the Township, and did not eliminate the authority granted to Oshtemo Township by Const 1963, art 7, § 29 to control its roads and rights-of-way. The arguments that Act 30 preempted Oshtemo Township's ordinance and is unconstitutional ignores the clear language of constitutional provisions, MCL 460.570(1), and binding precedent.

Const 1963, art 7, § 29 makes a utility's use of public places and rights of way subject to local approval. A local government is authorized to enact resolutions and ordinances relating to such matters; however, those enactments are "subject to the constitution and law." Const 1963, art 7, § 22.

METC used Act 30 to apply for a CPCN to build a new transmission line. In making its application, METC was required to include any zoning ordinance that would affect, i.e., regulate the location or construction of, the proposed route. MCL 460.567(2)(d). Oshtemo Township's relevant ordinance, if applicable, would require METC to locate a portion of its proposed transmission line underground. The ordinance did not provide for any exceptions to this requirement. METC determined that locating a portion of the proposed line underground would be prohibitively expensive, and so sought a CPCN for a line to be constructed entirely above

---

[7] Regulations dealing with underground electric facilities are located at AC R 460.511 through 460.519. However, these regulations refer specifically to "electric distribution facilities" operated at 15,000 or 20,000 volts or less. These regulations do not apply to the proposed transmission line at issue in these cases.

ground. The PSC was entitled to accept METC's evidence regarding the cost and preferability of constructing a line above ground, notwithstanding the fact that the record also contained contradictory evidence. See *Great Lakes Steel Div of Nat'l Steel Co v Public Service Comm*, 130 Mich App 470, 481-482; 344 NW2d 321 (1983). The PSC issued a CPCN allowing METC to construct a transmission line that was entirely above ground. The PSC was entitled to find that METC was not required to comply with Oshtemo Township's ordinance, but was not required to do so. However, once the PSC issued CPCN allowing METC to build such a line, Oshtemo Township's ordinance conflicted with the CPCN. Under the plain language of MCL 460.570(1), that certificate took precedence over Oshtemo Township's conflicting ordinance that required that a portion of the transmission line be constructed underground. MCL 460.570(1) is not an unconstitutional blanket usurpation of Oshtemo Township's ability to pass regulations and ordinances regarding its municipal affairs. The Legislature has the authority to enact laws that limit the way in which a local government can exercise the power granted to it under Const 1963, art 7, § 29. See *Lansing*, 275 Mich App at 433; see also Const 1963, art 7, § 22. The argument that the PSC's analysis was required to expand beyond the conclusion that the CPCN took precedence over Oshtemo Township's conflicting local ordinance, and that the PSC was required to determine if the ordinance conflicted with some state law other than the CPCN, finds no support in the language of any portion of Act 30, particularly not in MCL 460.570(1), or in any case law.

"The legislative power of the State of Michigan is vested in a senate and a house of representatives." Const 1963, art 4, § 1. In *Michigan Elec Coop Ass'n* this Court stated:

> The Legislature cannot delegate its power to make a law; however, it can enact a law that delegates a power to determine a fact or status upon which the law makes, or intends to make, its own action depend. Such a statute must be sufficiently broad to permit efficient administration designed to carry out legislative policy, but not so broad as to leave an administrative body with uncontrolled and arbitrary power. The guiding principles in determining whether a statute provides sufficient standards for the exercise of administrative discretion are: (1) the provision in question should be read with reference to the act as a whole; (2) the standard should be as reasonably precise as the subject matter requires or permits; and (3) if possible, the statute must be construed in such a way as to render it valid rather than invalid, i.e., as conferring administrative, not legislative power, and as vesting discretionary, not arbitrary, authority. *Dep't of Natural Resources v Seaman*, 396 Mich 299, 308-309; 240 NW2d 206 (1976). [*Michigan Elec Coop Ass'n*, 267 Mich App at 622-623.]

Act 30 is not an unconstitutional delegation of power. The evaluation of an application for a CPCN requires the PSC to consider a multitude of factors, including any conflicting local zoning ordinances. MCL 460.567(2)(d). Each application presents its own unique facts and circumstances. The Legislature could not have specified with any practicality or feasibility what routes or configurations the PSC would be required to consider in each case. The standards set out in MCL 460.568(5) are as reasonably precise as the subject matter permits. See, e.g., *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 588; 609 NW2d 593 (2000). Moreover, the PSC can grant a CPCN only if it finds that the applicant has made the required showings set out in MCL 460.568(5). Neither Oshtemo Township nor amici Michigan

-11-

Townships Association, et al, has established that Act 30 is an unconstitutional delegation of power from the Legislature to the PSC.

## V. Conclusion

The issues raised by appellants and amici in these consolidated cases are without merit and do not warrant reversal of the PSC's order granting METC's application for a CPCN.

We affirm and lift the stay. No taxable costs pursuant to MCR 7.219, a question of public policy involved.

/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto